G. L. & H. J. GROSS *vs.* LODOWICK H. TILLINGHAST.

MAY ·8, 1913.

PRESENT:    Johnson, C. J., Parkhurst, Sweetland, and Vincent, JJ.

*(1)  Brokers.  Evidence.  Books.*

In an action to recover a broker's commission, a loose-leaf "For Sale" book, in which plaintiff in the presence of defendant noted the various particulars given him by defendant relative to the sale of the property, was admissible as a memorandum in the regular course of business, in confirmation of plaintiff's testimony.

*(2)  Brokers.  Evidence.*

In an action to recover a broker's commission, upon the issue as to whether the efforts of plaintiff led to the sale, evidence offered by defendant that he had been assisted in the sale by a third person and had paid the latter for his services was immaterial.

*(3)  Brokers.  Sales.*

If a sale is brought about by the efforts or negotiations of a broker, or where he has produced a purchaser who is able and willing to purchase on terms satisfactory to the seller, he is entitled to his commission, even though the sale may be finally consummated through the instrumentality of another person.

*(4)   Brokers.   Sales.*

Where a broker has called the attention of the purchaser to the property, has
had interviews with him and has inspected the property with him, and such
efforts have been followed almost immediately by the purchase of the
property, it is not necessary to entitle the broker to his commission, that
he should in his testimony exclude all other influences, since it must be
presumed that the sale resulted from his efforts.

Assumpsit.   Heard on exceptions of plaintiffs and sus-
tained.

Vincent, J.   This an action of assumpsit to recover
a broker's commission for services rendered in connection
with the sale of a house and lot at No. 1704 Broad street,.
Edgewood, Rhode Island.

The plaintiffs are real estate agents and brokers.   At,
the trial in the Superior Court the plaintiffs produced
evidence that the defendant on December 28, 1907, called
at their offices, where he had an interview with Mr. E. Tudor
Gross, one of their representatives connected with their real
estate department;   that during this interview between
Mr. Gross and the defendant the latter gave Mr. Gross a.
full description of the Edgewood property, before mentioned,
including the name of the plat, the lot number and the
assessed valuation;   that he named the price for which he
desired to sell the same;   that he gave information as to
how the house could be shown to customers and granted.
permission to the plaintiff to maintain a sign in the yard
indicating that the property had been placed in its hands.
for sale, all of these particulars being noted by Mr. Gross, in
presence of the defendant, in a book kept by the plaintiffs.
for that purpose and known as their "For Sale" book.

The plaintiffs, having received these instructions from
the defendant, mailed a list of houses which were for sale
by them in Edgewood, including the house of the defendant,
to Mr. Francis Flynn, Sr.   Later the defendant's house
was included in another list sent to Mr. Flynn, Sr., by the
plaintiffs.

It further appeared from the testimony that Mr. Francis Flynn, Jr., at the request of his father, was assisting him in finding a house in Edgewood, with that object in view he had an interview with Mr. Joseph F. Forestal, also a representative of the plaintiffs; that Mr. Flynn, Jr., had also been furnished by the plaintiffs with a list of houses in Edgewood, including the house of the defendant, and that later Mr. Flynn, Jr., had an interview with Mr. James H. Hurley the manager of the plaintiffs' real estate department, regarding the purchase of the defendant's property; that on October 9, 1908, Mr. Flynn, Jr., called up Mr. Hurley by telephone and expressed his wish to inspect the defendant's house, whereupon the plaintiffs sent a clerk, who waited upon Mr. Flynn, Sr., at his office and who accompanied him, his wife, son, and daughter to Edgewood, where he showed them through defendant's house. That after examining the house, Mr. Flynn, Sr., stated that he would call and see Mr. Hurley about it. Instead of seeing Mr. Hurley, Mr. Flynn, Sr., a day or two later, opened negotiations with the defendant through a friend, Mr. McWilliams, and a sale of the house to Mr. Flynn was soon consummated for the sum of $11,000.

The testimony adduced by the defendant is corroborative of that of the plaintiffs in some important particulars. It appears from the defendant's testimony that Mr. Flynn, Jr., in his endeavor to secure a suitable house for his father, had a number of interviews with Mr. Forestal, representing the plaintiffs; that both Mr. Hurley and Mr. Forestal called to see Mr. Flynn, Jr., in reference to the sale of the defendant's house; that on October 9, 1908, the Flynns, at their solicitation, were shown through the defendant's house by Mr. Fiske of the plaintiff's office, and that they called upon the plaintiffs for the key in consequence of their previous talk with Mr. Forestal about buying the house.

Mr. Flynn, Sr., does not deny that on October 9, 1908, the day when the house was inspected, he promised to see Mr. Hurley about it in a few days.

Mr. McWilliams, the friend, who afterwards took up the negotiations with Mr. Flynn, Sr., testified that it was after October 9, 1908, and after the inspection of the house by the Flynn family that he first introduced Mr. Flynn, Sr., to the defendant.

In denial of the plaintiffs' testimony, Mr. Flynn, Jr., testified in effect that the defendant's house was not discussed by him with Mr. Forestal or Mr. Hurley prior to October 9, 1908.

The defendant in his own testimony admits that he knew that the plaintiffs had the property in question for sale and he nowhere claims that he, at any time, withdrew the same or notified them in any manner not to proceed therewith. The defendant in the first place denied that he had ever been in the Gross office at all; then he said that he was not in the Gross office on December 28, 1907, in reference to the sale of the Edgewood property, and finally that he was in the Gross office at some time, the date of which he does not remember, in reference to the sale of some property on Academy avenue. He cannot say that such interview did not occur on December 28, 1907, that being the date testified to by Mr. Gross as the time when the defendant called at the plaintiffs' offices and gave instructions relative to the sale of the Edgewood property. The defendant also says that he personally advertised the property for sale, but that he is unable to state when such advertisement appeared.

In another portion of his testimony the defendant says: "I gave the property to these people to sell for $16,000." The defendant further said that he sold the property himself directly to Mr. Flynn, Sr., paying Mr. McWilliams $100 for his services in the matter, and that no one in the plaintiffs' office told him that they had a prospective customer.

A trial of the case in the district court of the sixth judicial district resulted in a decision for the plaintiffs of $220 and costs. The defendant claimed a jury trial and the jury in the Superior Court rendered a verdict for the

defendant. A motion for a new trial was denied. The case is now before this court upon the plaintiffs' exceptions which are as follows:

"(1) To the ruling of said Justice, as appears on page 7 of the Transcript of Testimony filed herewith, excluding a sheet of original entry of the property at 1704 Broad Street from the 'For Sale' Book of the plaintiffs, and offered in evidence as 'Plaintiffs' Exhibit A', as appears on page 4 of said Transcript of Testimony, the plaintiffs' exception to which ruling is noted on page 7 of said Transcript of Testimony.

"(2) To the ruling of said Justice as appears on page 65 of said Transcript of Testimony, denying the motion of the plaintiffs' counsel to strike from the record the answer to question 39, as appears on page 64 of said Transcript, the plaintiffs' exception to which ruling appears on page 65 of said Transcript.

"(3) To the ruling of said Justice as appears on page 90 of said Transcript of Testimony admitting a line of testimony as indicated by question 9 on page 89 of said Transcript, the exception to which ruling is noted on page 90 of said Transcript.

"(4) To the refusal of said Justice to charge the jury as appears in plaintiffs' fifth request to charge as set forth on page 110 of said Transcript of Testimony; the exception to which refusal is noted on said page 110.

"(5) To the refusal of said Justice to charge the jury as appears in plaintiffs' sixth request to charge as set forth on page 110 of said Transcript of Testimony; the exception to which refusal is noted on said page 110.

"(6) To the granting by said Justice of the defendant's fourth request to charge, as appears on pages 110 and 111 of said Transcript; said charge appearing on page 108 of said Transcript, and the exception to said charge being noted on page 111 of said Transcript.

"(7) To the ruling of the said trial justice denying the plaintiffs' motion for a new trial upon the grounds stated in

said motion, to which ruling an exception was duly taken by the plaintiffs."

(1)　Mr. E. T. Gross testified in behalf of the plaintiffs that on December 28, 1907, in the presence of the defendant, he noted upon the plaintiffs' loose-leaf "For Sale" book the various particulars given to him by the defendant relative to the sale of the property in Edgewood, and that such entries upon said book were made at the plaintiffs' offices in the regular course of their business. The plaintiffs offered in evidence the "For Sale" book in corroboration of the testimony of Mr. Gross. The admission of this book was objected to on the part of the defendant and was ruled out by the court. We think that the book should have been admitted in evidence and that its rejection by the trial court was error. It purported to be and was, according to the testimony of Mr. Gross, a memorandum in the regular course of business, made in the presence of the defendant and in a book kept by the plaintiffs for that purpose. It should have been admitted and the jury thus permitted to consider its value in confirmation of the plaintiffs' testimony.

The defendant in the course of his testimony stated that he had been assisted in the sale of the house by a Mr. Mc-Williams and that he paid McWilliams for his services $100.

(2)　The plaintiffs moved that the testimony of the defendant regarding the payment of $100, should be stricken from the record on the ground that it was not material. We think it should have been stricken out. Whether or not defendant paid McWilliams $100, would have no bearing upon the real issue in the case. The real question is, did the efforts of the plaintiffs, in calling the attention of the Flynns to the defendant's property, following them up and later showing it to them, lead to the final result?

Mr. Frank J. Kenney testified that he was a real estate broker associated with the Ralph C. Watrous Company, and that in the first week of September, 1908, he showed the defendant's house to Mr. Flynn. He was interrogated as to what he did in that connection. This question was

objected to on the part of the plaintiffs, the objection was overruled by the court and the testimony admitted. This question was followed by other questions in the same line of inquiry designed to bring out the various things done by Mr. Kenney in his effort to sell the house of the defendant to the Flynns. It does not appear, however, that the efforts of Mr. Kenney resulted in anything. The matter does not appear to have been followed up by Mr. Kenney during the period of a year prior to the time when the house was shown to the Flynns by the plaintiffs. Any efforts, on the part of Kenney, to sell the house seem to have been abandoned and the Flynns took no further interest in the matter until their attention was called to it anew by the plaintiffs.

The plaintiffs requested the court to charge the jury in and by their 5th request, as follows: "If you believe that the defendant placed the property in question in the hands of the plaintiffs, or their agent, for sale, and did not withdraw the property from the plaintiffs before the sale thereof, or the contract to sell, and if you further find that the plaintiffs or their agents, did any acts in an endeavor to sell said property to Mr. Francis Flynn, which said acts contributed to the making of the sale to said Flynn—your verdict must be for the plaintiffs, and it is immaterial whether or not the contract was finally concluded by the defendant himself, or through another person."

This request is, in the main, a correct statement of the law. The use of the word "contributed," however, tends (3) to leave the instruction somewhat indefinite. The law in this State seems to be that if the broker is the effective agent in bringing about the sale; if the sale is brought about through his efforts or negotiations; or if he has produced a purchaser who is able and willing to purchase on terms satisfactory to the seller, he is entitled to his commission, even though the sale may be finally consummated through the instrumentality of another person. *Peckham* v. *Ashhurst*, 18 R. I 376. In view of the fact that the scope of

this request is not altogether clear, we cannot say that the trial court was in error in refusing to grant it and the exception thereto is therefore, overruled.

The plaintiffs further requested the court to charge the jury in and by their 6th request, as follows: "If you believe that the defendant placed the property in question in the hands of the plaintiffs, or their agent, for sale and did not withdraw the property from the plaintiffs before the sale thereof, or the contract to sell, and if you further find that the plaintiffs, through their agents, did the things which the witnesses for the plaintiffs have testified to you were done in the matter of making a sale of this property to Mr. Flynn—your verdict must be for the plaintiffs."

We think this instruction should have been given. Under the conditions enumerated and referred to in this request, the plaintiffs would be clearly entitled to recover their commission from the defendant.

At the request of the defendant the court charged the jury that, "The defendant by his counsel requests the court (4) to charge the jury that a broker not having the exclusive sale of property does not become entitled to a commission merely by bringing the property to the attention of the person who finally buys it. He must show that his services were the efficient or effective means of bringing about the actual sale." We think that this instruction was misleading and improper. There was testimony to the effect that the plaintiffs had called the attention of Mr. Flynn to the defendant's property by sending both to him and to his son, who was acting for him, a list of houses in Edgewood, including the house of the defendant. That later some interviews between the Flynns and the representatives of the plaintiffs took place which finally resulted in an inspection of the house, under the guidance of the plaintiffs, and that such efforts on the part of the plaintiffs were followed almost immediately by the purchase of the property by Mr. Flynn for the sum of $11,000. It is not necessary, in order to entitle the plaintiffs to a com-

mission, that they should do any more than they claim to have done, their efforts being followed almost immediately by a sale of the property. If the plaintiffs have done what they claim to have done in connection with this sale, it is not necessary that they should enter upon a line of testimony intended to exclude all other influences. If they called the attention of the purchaser to the property, had interviews with him regarding it, and exhibited it to him and such efforts were followed by a sale, it must be presumed that such sale resulted from the plaintiffs' efforts, and we think the court erred in charging the jury in accordance with the defendant's fourth request.

The testimony in favor of the plaintiffs is given in detail, their witnesses stating the various steps which were taken by them to effect the sale of the defendant's property to Mr. Flynn. As against this testimony of the plaintiffs, there is little except the general denial of the defendant himself that he ever had any business transactions with the plaintiffs regarding the sale of the property in question, at the same time admitting that he knew they had it for sale. It seems to us that the testimony greatly preponderates in favor of the plaintiffs and that the trial court should have granted their petition for a new trial.

The 1st, 2nd, 3rd, 4th, 6th and 7th exceptions of the plaintiffs are sustained, the 5th exception is overruled, and the case is remitted to the Superior Court for a new trial.

*Comstock & Canning, Henry C. Hart,* for plaintiff.
*Curtis & Ball, Adolph Gorman,* for defendant.