EARLE O. JOHNSON *et al vs.* KILE & MORGAN COMPANY.

JANUARY 13, 1928.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

RATHBUN, J. This is an action in assumpsit to recover damages for alleged breach of contract to receive and pay for lumber. The jury returned a verdict for the defendants and the case is before us on the plaintiffs' exceptions as follows: To the refusal of the trial justice to direct a verdict for the plaintiffs; to his refusal to grant to the plaintiffs a new trial; to the admission of evidence; to instructions to the jury and to the refusal to instruct the jury as requested.

The defendants contend that they were entitled to receive lumber from a certain section manufactured by a designated mill. The plaintiffs contend that they were entitled to deliver merchantable lumber, of the kind and description ordered, without regard to the place or mill from which the lumber came.

The main question is what contract did the parties enter into, if, in fact, there was a meeting of the minds at all?

After some preliminary conversation and correspondence, by which the defendants were told that the plaintiffs were selling agents for the Arko Lumber Company of Arkansas City, Ark., the defendants mailed to the plaintiffs an order for three carloads of specified lumber "f. o. b. car Memphis, Tenn." The letter accompanying the order contained the following statement: "We understand that this stock is to come from the Arko Lumber Co. band mill at Arkansas City". The plaintiffs sent to the defendants a formal acknowledgment of the order accompanied by a letter containing statements as follows: "We enclose herewith acknowledgment of your order #6068. The only change that we have made in this, is the f. o. b. price. This stock was quoted to your Mr. Boston, f. o. b. our Mill, and not f. o. b. Memphis." The defendants replied in part as follows: "We have your letter of April 19, with acknowledgment of our order #6068, you making the price F O B the mill, and with the understanding that the mill is at Arkansas City we will waive this point and concede to your understanding." The plaintiffs replied as follows: "We have your favor of the 22nd inst., agreeing to the terms as outlined in our acknowledgment of your order #6068. Just as soon as this material is in condition to ship we will take the matter up with you."

The defendants believed they had a contract for lumber to be manufactured by the Arko Lumber Company in the product of which the defendants had confidence. For a considerable time the language of the plaintiffs' letters confirmed that belief. However, on the day the original order was received the plaintiffs placed it with the Brown & Hackney Co. of Louisiana. The defendants had no lumber yard and it was understood that the cars of lumber would be shipped direct to their customers. Although there was a slump in the lumber market the defendants did, although somewhat tardily, give shipping instructions for one carload which was shipped, accepted and paid for. They, however, delayed giving further shipping instructions. The plaintiffs,

after sending a number of letters, emphatically requesting shipping instructions, wrote stating in substance that they had placed the order with the Brown & Hackney Company, who had manufactured the lumber and were insisting on being paid. The letter suggested that the defendants pay the agreed price for the balance of the lumber in order that it may be set aside and marked with the defendants' name and shipped by Brown & Hackney Co. whenever the defendants' customers could conveniently receive it. The defendants replied as follows: "We have your letter of November 10th and note from the last paragraph that you wish to discontinue business relations. Inasmuch as you have abrogated our order, thereby contradicting the conditions of the same which in effect is cancellation, the order is thereby cancelled and records closed." The defendants had previously had unsatisfactory business dealings with the Brown & Hackney Company. It had been brought to the plaintiffs' attention that the defendants relied upon the reputation for skill and honesty of certain manufacturers of lumber and that it was a matter of importance to the defendants whether the lumber was manufactured by the mill selected or by some one else, but it is contended by the plaintiffs that the admission of evidence of this fact violated the parol evidence rule that where the parties have reduced their agreement to writing, evidence of conversations and communications leading up to the contract will not be admitted to modify or contradict the terms of the written contract. The plaintiffs excepted to the admission of the defendants' letter, which accompanied their order for the lumber in question, also to the testimony of Mr. Kile that the letter did accompany the order; that he knew Johnson Brothers from conversation with them to be the selling agents of the Arko Lumber Co. and would not have purchased from them as dealers in lumber. The accompanying letter was in part as follows: "Enclosed herewith we hand you our order #6068 which is in confirmation of our telegram to you of today, in accepting your proposition as made to Mr. Boston on Saturday. We

understand that this stock is to come from the Arko Lumber Company band mill at Arkansas City."

The plaintiffs contend that their "acknowledgment" of the order constituted an offer; that the defendants' letter stating: "We have your letter of April 19, with acknowledgment of our order #6068, you making the price FOB the mill, and with the understanding that the mill is at Arkansas City we will waive this point and concede to your understanding", constituted an acceptance; that the two constituted a written contract, embodying all of the terms of the contract, and that extrinsic evidence was inadmissible to determine either what the contract was or the meaning of any of the terms embodied in the contract. The trial justice refused the plaintiffs' request to rule to that effect and submitted the case to the jury on all of the evidence, including the defendants' letter which accompanied the order. Most of plaintiffs' exceptions involve merely the question whether this ruling was correct.

Whether the jury found that the minds of the parties did not meet or that the plaintiffs agreed to deliver lumber manufactured by the Arko Lumber Company, it is impossible to determine. We think the trial justice did not err in submitting the case to the jury on all of the evidence including the letter accompanying the defendants' order. The letter was as much a part of the original offer as the order itself. The plaintiffs in acknowledging the order sent to the defendants a letter accompanied by a copy of the original order, with two modifications, made on the plaintiffs' order form which contained typewriting, memoranda and printing. The copy contained a change in terms of payment, and the change as to f. o. b. price which change was specifically pointed out by the accompanying letter as the "only change". The letter contained the following: "We enclose herewith acknowledgment of your order #6068. The only change that we have made in this, is the f. o. b. price. This stock was quoted to your Mr. Boston, f. o. b. our Mill, and not f o. b. Memphis." This letter was as much a part of the

plaintiffs' offer as the "acknowledgment" which was not even signed.

The words "our mill" are not clear and unambiguous. It is elementary that had the parties embodied the words in a formal written contract, extrinsic evidence would have been admissible to determine what mill the parties had in mind. In receiving evidence upon the question of the meaning of the words "our mill", the court was not permitting a party to vary or contradict clear and unambiguous terms of a written contract. It was not error to receive evidence to explain this ambiguous term. Fortunately, the correspondence between the parties throws much light upon the question. The plaintiffs' letter of March 23, 1920, contained language as follows: "The writer is now in business for himself as you will note from the above letterhead and also selling the output of the Arko Lumber Co. who operate a double band mill at Arkansas City at Ark." The defendants' letter of April 12, 1920 which accompanied their offer, contained the sentence: "We understand that this stock is to come from the Arko Lumber Co. band mill at Arkansas City". The plaintiffs' "acknowledgment" and accompanying letter was a reply to defendants' letter containing the original offer, as well as to the paper containing the details of the order. The defendants' letter replying to plaintiffs' "acknowledgment" and accompanying letter contained the following: "We have your letter of April 19, with acknowledgment of our order #6068, you making the price FOB the mill and with the understanding that the mill is at Arkansas City we will waive this point and concede to your understanding."

It is clear that the defendants understood the words "our mill" to mean the mill of the Arko Lumber Company. What did the plaintiffs mean by the use of this term? In our opinion the jury would have been justified in finding that both parties understood the words "our mill" to mean the mill of the Arko Lumber Company for whom the plaintiffs were the selling agents and it was correct to submit the

question to the jury for their determination. The rule is stated in 6 R. C. L. at p. 862 as follows: "It is certainly true, as a general rule, that the construction of written instruments belongs to the court and not to the jury; nevertheless there are cases in which, because of the ambiguous nature of the words used or because of obscure references to unexplained circumstances, the true interpretation of the language may be left to the consideration of the jury for the purpose of carrying into effect the real intention of the parties. This rule is especially applicable to cases involving commercial correspondence, wherein the real objects and intentions and agreements of the parties are often indicated only by allusions to circumstances which are but imperfectly developed. It may be said, therefore, that where a contract is to be construed by its terms alone, it is the duty of the court to interpret it; but where its meaning is obscure, and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury, under proper instructions." See also 13 C. J. p. p. 785, 786.

The jury may have found that the parties failed to enter into a contract because their minds never met upon the question whether the plaintiffs were to be at liberty to have the lumber manufactured at any mill they might choose. If there was no contract the defendants, of course, breached none. On the other hand, if the jury found that the parties made a contract and that one of its terms provided that the lumber would be manufactured by the Arko Lumber Company the conclusion to be drawn from the evidence is that the term was a condition which the plaintiffs must comply with in order to be ready and able to perform their part of the contract.

Section 12 of Chapter 305 of the General Laws of 1923, provides as follows: "Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer pur-

chases the goods relying thereon." The defendants were not only relying upon the promise but were insisting that the lumber be manufactured by the Arko Lumber Company. The only testimony upon this point shows that the natural tendency of the promise was such as to induce the defendants to purchase. If the jury found that a contract was entered into and that one of its terms was that the lumber would be manufactured by the Arko Lumber Company, the plaintiffs breached their warranty to have the lumber manufactured by said company.

Section 7, (1) of Chapter 309, G. L. 1923, provides as follows: "Where there is a breach of warranty by the seller, the buyer may at his election . . . (d) Rescind the contract to sell or the sale and refuse to receive the goods".

The rescript of the trial justice denying the plaintiffs' motion for a new trial not only approves the verdict but discloses the fact that he was very strongly of the opinion that the verdict did substantial justice between the parties. We are unhesitatingly of the same opinion and the exception to the refusal to grant the plaintiffs a new trial is overruled.

The plaintiffs excepted to a portion of the charge to the jury. The language called to our attention is not entirely clear apart from the rest of the charge but, when considered in connection with the context, constitutes no reversible error.

All of the plaintiffs' exceptions are overruled and the papers in the case are remitted to the Superior Court for the entry of judgment on the verdict.

*Gardner, Moss & Haslam*, for plaintiff.
*Percy W. Gardner*, for defendant.