351 A.2d 590.

## NEWPORT ELECTRIC CORPORATION *vs*. REDEVELOPMENT AGENCY OF NEWPORT, RHODE ISLAND.

FEBRUARY 10, 1976.

PRESENT: Paolino, Acting C. J., Joslin and Kelleher, JJ.

PAOLINO, J. On March 27, 1972, the plaintiff commenced a civil action against the defendant for breach of contract. The complaint includes the following allegations. The plaintiff is an investor-owned public utility corporation engaged in the generation, transmission, distribution and sale

of electricity to customers in the city of Newport and towns of Portsmouth, Middletown and Jamestown. The defendant is a redevlopment agency for the city of Newport, created pursuant to G. L. 1956 (1970 Reenactment) §45-31-9. During 1968 the defendant was implementing the Long Wharf-Market Square redevelopment project in the city of Newport. The plaintiff maintained certain electric power lines strung on poles placed on public rights-of-way in the Long Wharf-Market Square redevelopment project area. The plaintiff and the defendant entered into a contract whereby the plaintiff agreed to relocate these power lines in underground conduits and the defendant agreed to compensate the plaintiff for the cost of doing the work.

Before commencing construction, plaintiff asked for, and received, a copy of an opinion letter dated July 7, 1969, which had previously been sent to defendant by its counsel. The letter stated that in his opinion

"* * * a utility company in this state * * * may not be legally required under the applicable state statutes, local ordinances, judicial decisions, or provisions of the company's franchise to relocate existing lines underground or to install new lines underground * * *"

and that plaintiff

"* * * may be compensated for the cost of underground installations less the estimated cost of providing the same service through an overhead system."

The plaintiff immediately thereafter began construction of the underground facilities. In time it completed the work and the job was duly accepted and approved by defendant. The reasonable value of this work, less the sums which would have been expended had an overhead system been erected, in lieu of an underground one, was $65,521.99. The plaintiff demanded payment of such sum from defendant, but defendant refused to pay upon advice of counsel. It appears from counsel's letter of December 10, 1971 to defendant that he changed his opinion on the

basis of the court's decision in *Central Maine Power Co.
v. Waterville Urban Renewal Authority,* 281 A.2d 233
(Me. 1971). The defendant's refusal to pay resulted in
the filing of this action.

In its answer to plaintiff's complaint defendant ad-
mitted that it entered into a contract as alleged in plain-
tiff's complaint. It further admitted that plaintiff had
completed the work; that the reasonable value thereof
was $65,521.99; and that plaintiff had made demand for
the same. However, defendant set forth the following de-
fenses in paragraphs 6 and 7 in its answer:

> "6. That a public utility has no right to reimburse-
> ment for relocation of their facilities in public ways
> from a public authority without express legislative
> sanction. The Defendant has no right to reimburse
> the Plaintiff without such legislative sanction.
> "7. The Defendant has the police power to order
> the Plaintiff to place its utilities underground, at no
> cost to the Defendant, and this power could not be
> surrendered or contracted away by the Defendant."

On May 24, 1972, plaintiff filed a Super. R. Civ. P. 56
motion for summary judgment on the ground that there
was no genuine issue as to any material fact and that
plaintiff was entitled to a judgment as a matter of law.

On July 3, 1974, the trial justice filed his decision grant-
ing plaintiff's motion for summary judgment for plaintiff
in the sum of $65,521.99, plus interests and costs. He held
that the Maine case relied on by defendant was clearly
distinguishable and not in point. He based his decision on
the ground that defendant had statutory authority to
make the contract it did with plaintiff and that there was
legislative sanction for defendant to reimburse plaintiff for
the special underground installations installed by plain-
tiff. Additionally, he held that the doctrine of estoppel
applied to the situation in the case at bar. A judgment
on the decision was duly entered and defendant appealed.
For the reasons that follow, we affirm.

The defendant's first contention is that at the time that it entered into its alleged contract with plaintiff, the latter was under a duty to bear the entire expense of the relocation of the electric facilities involved in this case. In making this argument defendant relies on the common-law rule that, in the absence of a statute to the contrary, a public utility which uses the public streets under a franchise implicitly agrees to relocate its facilities at its own expense, whenever the municipality, in a reasonable exercise of the police power, requires that this be done.

We do not disagree with the statement of the rule, but we are not convinced that it applies here. In the first place, the common-law rule applied to municipalities and not to agencies such as defendant which was not known at common law. The city of Newport is not a party to this proceeding; the defendant here is the Redevelopment Agency of Newport, Rhode Island.

But even if we assume, without deciding, that the common-law rule applies to an agency such as defendant, a reading of the Redevelopment Act of 1956, chapters 31 to 33 of title 45, shows that there is express legislative sanction for this contract. The Act set forth the powers of redevelopment agencies. Chapter 31 states in general terms the legislative findings and policies of the state with respect to such agencies. Section 45-31-6 provides that the powers given in the Act are for public uses and purposes for which tax money and other public funds may be expended.[1]

---

[1]General Laws 1956 (1970 Reenactment) §45-31-6 reads as follows:

"Public policy to assist in redevelopment.—It is hereby declared to be the policy of this state to protect and promote the health, safety, morals and general welfare of the people of the state and particularly of the people of the communities of the state in which blighted and substandard areas exist by the elimination and prevention of such areas through the utilization of all means appropriate for that purpose thereby encouraging the provision of health-

The corporate powers of redevelopment agencies are set forth in §45-32-5. Section 45-32-5(f) reads as follows:

"Corporate powers of agencies.—Each redevelopment agency shall constitute a public body, corporate and politic, exercising public and essential governmental functions, and shall have all the powers necessary and convenient to carry out and effectuate the purposes and provisions of chapters 31 to 33, inclusive, of this title, including the powers enumerated in this section in addition to others granted by said chapters.
                    *  *  *

"(f) *To cause* streets and highways to be laid out and graded, and pavements or other road surfacing, sidewalks and curbs, *public utilities of every kind*, parks, playgrounds and other recreational areas, off street parking areas and other public improvements *to be constructed and installed*." (Emphasis added.)

In our judgment §45-32-5(f) expressly authorizes agencies to enter into contracts with public utilities for the construction, installation, and relocation of electric facilities of every kind, including the power to enter into contracts to cause a public utility to place its lines underground.

When §45-32-5(f) is read together with §45-31-6, it is clear that our Redevelopment Act expressly sanctions the making of a contract such as the one involved here and, in addition, empowers the agency to expend tax money and other public funds to pay for such work.

After reading the decision of the Supreme Judicial Court of Maine in *Central Maine Power Co.* v. *Waterville Urban*

---

ful homes, a decent living environment and adequate places for employment of the people of this state and its communities in such areas through redevelopment. To this end *it is hereby declared that the powers conferred by chapters 31 to 33, inclusive of this title are necessary to effectuate the purposes of said chapters and are for public uses and purposes for which the power of eminent domain may be exercised, tax moneys and other public funds expended and public credit pledged*." (Emphasis added.)

*Renewal Authority, supra,* we agree with the trial justice's conclusion that the statutes and factual situation in the Maine case are materially distinguishable from those in the case at bar and therefore not controlling here. The contracts in the two cases are different. The contract in the Maine case was expressly conditioned upon whether

> "* * * under the constitution, common law and statutes of the State of Maine the Company could not be legally compelled to install such cables and wires underground at its own expense." *Id.* at 235.

In the case at bar defendant's promise to pay was unequivocal and was supported by its counsel's opinion, upon which plaintiff relied. Furthermore, the Maine court could find no express legislative sanction in its statutes authorizing the agency in that case to expend public funds for placing public utilities facilities underground. *Id. at* 235-36.

In view of our conclusion that our Redevelopment Act expressly authorizes an agency such as the defendant to enter into the contract it made with the plaintiff and to pay for such work out of tax monies and other public funds, we do not reach the question of the applicability of the doctrine of estoppel to the case at bar. For the same reason we do not find it necessary to discuss the other issues raised by the defendant. On the state of the pleadings in this record we find no genuine issue as to any material fact and therefore we affirm the judgment entered by the trial justice granting the plaintiff's motion for summary judgment.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court for further proceedings.

Mr. Chief Justice Roberts was present at oral argument but retired prior to consideration or decision of this case.

Mr. Justice Doris did not participate.

*Sheffield & Harvey, Richard B. Sheffield,* for plaintiff.

*Macioci & Grimm, E. Paul Grimm, Joseph J. Macioci,* for defendant.