354 A.2d 118.

ANA P. BARBOZA *vs.* CONVERSE RUBBER COMPANY.

MARCH 29, 1976.

PRESENT: Paolino, Acting C. J., Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This is an employee's appeal from a decree of the Workmen's Compensation Commission denying and dismissing her petition, which seeks a review of an agreement wherein her employer's insurer was authorized to stop paying her compensation benefits.

In May 1972 Ana had been working for about 4 months in the Converse Rubber Company's Bristol, Rhode Island, plant. The facts surrounding her injury are contained in a "House Memo," prepared by the plant's nurse and included in the record. It indicates that at approximately 11:15 p.m. on May 3 Ana, while operating an "outsole press," injured the thumb and index finger of her right hand. Moreover, it noted that the plant physician would examine Ana's "swollen & painful" hand. Additionally, the record contains a series of memoranda prepared by the

nurse which show that Ana, though totally incapacitated for work, returned to the plant periodically for further treatment and examination.

Following her injury Ana executed two documents. The first was a preliminary agreement entitling her to a weekly compensation benefit of $64.28 plus a dependency benefit, the amount of which depended upon the number of her dependents who were under the age of 18. Nearly a month later, June 8, 1972, she signed a suspension agreement, indicating that she was returning to work that day, thereby absolving the insurer from its obligation to continue to make the weekly payments. Ana testified that the plant physician had told her that she could return to work.

Ana returned to work but was only on the job for approximately a 2-week period. Thereafter, she was listed among the absentees. Apparently the plant had some communication with her, but nothing further developed in this proceeding until a petition to review was filed in March 1973. It alleged that Ana had been totally incapacitated since June 20, 1972.

Testimony in support of the petition was offered by Ana and an orthopedic surgeon who had examined her in November of 1972. The orthopedist told the trial commissioner that he had determined that Ana was not able to work on the basis of the history given by the patient, a study of x-rays, and an examination of her hand. Ana now claims that the orthopedist's finding of incapacity amounts to uncontradicted and unimpeached testimony, which under our law a factfinder must accept as true. We acknowledge this principle, but it is not applicable to the facts of the case at bar.

At the time of Ana's November examination, the medical witness practiced his specialty with a group of orthopedists whose practice was somewhat centered in the metropolitan area of Providence. Subsequently, he left

the group and began his own practice in South Kingstown. He acknowledged that he had no independent recollection of Ana and his findings were based solely on the information contained in the group medical reports which are part of the record. On cross-examination he admitted that he did not know if Ana ever worked after the May 3 incident and believed that the patient had been seen by the plant physician. Moreover, he conceded that he did not know whether his patient had ever sought medical assistance for any other ailment during the months between the injury and her first visit in November. However, additional records and testimony serve to remove this uncertainty.

The nurse's records indicate that Ana failed to appear for a scheduled May 15 examination by the plant physician because she had telephoned Converse's personnel division and told those in charge that she was ill. A June 7 memo indicates that Ana was under the care of a Bristol physician whose specialty included cardiology and internal medicine. Ana testified that unbeknownst to the surgeon this physician had been treating her for digestive difficulties for a considerable amount of time prior to her initial visit with the orthopedic group.

Additionally, Ana's membership in the labor union that represented Converse's employees prompted the concern of her shop steward. He testified that shortly after her return to work in June she did not appear on the job for a number of days. Consequently, on June 19 he was told to call Ana in his capacity as an assistant foreman and find out why she was absent from work. Ana, an immigrant for merely a year, conferred with him in Portuguese over the phone. The steward testified that when he asked her if she was coming back to work or wanted her job, she replied that "* * * she was not coming back to work no more. She told me she don't want the job no more."

224

■    When Ana sought a review of the suspension agreement, it then became her duty to show that any subsequent reduction in her earning capacity was "directly and exclusively referable" to the May 3, 1972, injury. *Perfetto* v. *Fanning & Doorley Constr. Co.*, 114 R. I. 624, 627, 337 A.2d 791, 793 (1975); *Boudreau* v. *R. J. Mfg. Co.*, 112 R. I. 683, 686, 314 A.2d 428, 430 (1974).

■    The orthopedist's testimony can hardly be described as uncontradicted and unimpeached. There is evidence which indicates that this witness was completely unaware that his patient had been consulting with the internal medicine specialist or that she had previously told the shop steward she no longer wanted to work. It is clear that these two facets of the testimony cast so much doubt on the findings made by the orthopedist that it is impossible to characterize the expert's testimony as uncontradicted and unimpeached. Consequently, there is legally competent evidence which serves as a basis for the denial of the petition to review.

The employee's appeal is denied and dismissed, the decree appealed from is affirmed, and the case is remanded to the Workmen's Compensation Commission.

*Lovett & Linder, Ltd., Raul L. Lovett,* for petitioner.

*Abatuno & Chisholm, Vincent J. Chisholm,* for respondent.