400 A.2d 952 (1979)
JUDD REALTY, INC.
v.
Frank TEDESCO.
No. 77-206-A.
Supreme Court of Rhode Island.
April 26, 1979.
*953 J. Renn Olenn, Providence, for plaintiff.
Arnold N. Montaquila and Kenneth J. Rampino, Johnston, for defendant.

OPINION
WEISBERGER, Justice.
This is an appeal from a judgment dismissing with prejudice the plaintiff's complaint in an action to recover a commission under a real estate brokerage agreement.
On November 18, 1973, defendant, Frank Tedesco, signed a document entitled "ECLUSIVE AGENTS CONTRACT," which had been provided by the president of plaintiff corporation, Judd Realty, Inc. This agreement reads as follows:
"EXCLUSIVE AGENTS CONTRACT Date November 18, 1973 Between Judd *954 Realty Inc. and Frank Tedesco Killingly & Greenville Ave. You may list my property described on the opposite side hereof and sell same for the following price $25000.
In consideration of the agreement to afford me the facilities of your office, I hereby constitute you as agent with EXCLUSIVE RIGHTS TO SELL for 6 months from this date.
Should a purchaser be found during the life of this agreement by me; by you or by any other person (or, if within sixty days thereafter it shall be sold to a customer to whose attention it has been brought, previous to expiration of this agreement) I will pay you a commission of 8% of the price received.
 [signed] Frank Tedesco Owner(s)"
Pursuant to this agreement plaintiff was permitted to list for the price of $25,000 the subject lot which was located in Johnston, Rhode Island.[1]
At trial, plaintiff's president, who also acted as a broker for the plaintiff corporation, testified that she attempted to find buyers during the 6-month period following November 18, 1973, and that she had posted the property and advertised in the Providence Journal. She also stated that she weeded out inquiries that were not serious. Further, she testified that approximately a week before the agreement expired, she presented to defendant a purchase and sale agreement signed by a prospective purchaser who had bought and sold property through the broker in her capacity as a self-employed real estate agent. The broker testified that the purchase and sale agreement was accompanied by a check for $1,000, dated May 10, 1974. She also testified that defendant stated that he did not have time to read the instrument when it was presented, because his mother was ill in the hospital. The broker testified that defendant did not get back to her as promised, and that finally she reached him at home within days thereafter.
The defendant testified that the check was not presented to him but that he had been told by the broker that she had the check in her possession. The defendant did, however, testify that he received a purchase and sale agreement containing a $25,000 sale price 2 days before the brokerage agreement expired. Further, he stated that he was busy at the time, that she did not contact him as promised until the day after the agreement expired, and that when she finally reached him, he told her he did not want to sell "under those conditions." Both the broker and defendant testified that the purchase and sale agreement specified a closing date in or within 90 days. We further note that while defendant testified he wanted the money "sooner" than 90 days, the broker testified that plaintiff's attorney, upon defendant's request, agreed to arrange the closing for the morning following the conversation between the broker and defendant. She stated that defendant rejected this proposal. The defendant sold the property in July 1974 to another party for $23,000 and plaintiff instituted suit to recover the commission on the uncompleted sale.
At the close of plaintiff's case, defendant moved to dismiss the complaint on the ground that plaintiff had not sustained its burden of proof. The trial justice granted the motion for two reasons. First, he stated that the brokerage contract was illusory because plaintiff undertook to do nothing under the contract. Second, the trial justice stated that the brokerage agreement was a form contract provided by plaintiff and should be construed against plaintiff. Therefore, the trial justice construed the word "purchaser" to mean "someone who actually purchases the property." The trial justice reasoned that the commission was earned only if someone actually purchased the property within the contract time.
*955 In ruling upon a motion for an involuntary dismissal in a jury-waived case, the trial justice sits as a trier of law and facts. The trial justice weighs and considers the evidence, passes upon the credibility of witnesses and engages in the inferential process. Emerson Radio of New England, Inc. v. DeMambro, 112 R.I. 300, 308 A.2d 834 (1973); William T. Young, Inc. v. Simpson, 111 R.I. 12, 298 A.2d 526 (1973). In short, the trial justice reviews the evidence no differently than he would in a nonjury case where both plaintiff and defendant have completed their cases. Rowell v. Kaplan, 103 R.I. 60, 235 A.2d 91 (1967). Thus, where the evidence at the close of plaintiff's case shows no right to relief, the trial justice is empowered under Super.R.Civ.P. 41(b)(2) to grant the motion to dismiss. Fryzel v. Domestic Credit Corp., R.I., 385 A.2d 663 (1978).
On appeal, our duty in reviewing whether the motion to dismiss was properly granted is to determine whether the trial justice's findings are supported by evidence or whether he misconceived or overlooked any material evidence in making those findings. We must also determine whether the trial justice applied the correct rules of law. Emerson Radio, supra; Levy v. Industrial National Bank, 106 R.I. 437, 260 A.2d 919 (1970).
We conclude that the trial justice erred as a matter of law in construing the word "purchaser" in the brokerage agreement to mean "someone who actually purchases the property." Where a contract is to be construed on its terms alone, it is the court's duty to interpret the contract as a question of law. It is only when contract terms are ambiguous that construction of terms becomes a question of fact. Russolino v. A. F. Rotelli & Sons, 85 R.I. 160, 128 A.2d 337 (1957); Johnson v. Kile & Morgan Co., 49 R.I. 99, 140 A. 3 (1928). Similarly, it is only where contract terms are ambiguous that they are construed against the drafter. Fryzel, supra.
The defendant contends that the trial justice did not misconceive or overlook any material evidence in construing the term "purchaser." The defendant also contends that the trial justice properly construed the term "purchaser" against plaintiff which supplied the form contract. The defendant's arguments, however, are based on the premise that the term "purchaser" was ambiguous and that a question of fact regarding its meaning was presented. Quite simply, we do not believe that the word "purchaser" was ambiguous, and we observe that at trial no suggestion was made that the term "purchaser" or any other contract term was ambiguous.
It is well settled in Rhode Island that a broker has sufficiently performed and is entitled to compensation under a brokerage contract when the broker has produced a prospective purchaser who is ready, willing, and able to purchase at the price and terms of the seller. Kirby, Inc. v. Weiler, 108 R.I. 423, 276 A.2d 285 (1971); Gartner v. Higgins, 100 R.I. 285, 214 A.2d 849 (1965); Gross v. Tillinghast, 35 R.I. 298, 86 A. 721 (1913). This general rule applies where no special contract delineates what constitutes performance thereunder. Gettler v. Caffier, 92 R.I. 19, 165 A.2d 730 (1960); Manfredi v. Boss, 50 R.I. 125, 145 A. 442 (1929); Peckham v. Ashhurst, 18 R.I. 376, 28 A. 337 (1893). In the present case the brokerage agreement contains no language indicating any intention of the parties to depart from the aforementioned general rule. Accordingly, we hold that the trial justice erred as a matter of law in construing the term "purchaser."
We also believe that the trial justice erred as a matter of law in determining that the brokerage contract was "illusory" because plaintiff undertook to do nothing under the contract. Brokerage agreements may be either bilateral or unilateral in nature. Williston distinguishes unilateral and bilateral contracts as follows:
"An offer for a unilateral contract generally requires an act on the part of the offeree to make a binding contract. This act is consideration for the promise contained in the offer and doing it with intent to accept without more will create *956 a contract. * * * On the other hand, an offer for a bilateral contract requires a promise from the offeree in order that there may be a binding contract." 1 Williston, Contracts § 65 at 212-13 (3d ed. 1957).
Corbin also contrasts unilateral contracts with bilateral contracts in respect to brokerage agreements:
"The most commonly recurring case is one in which the owner employs a broker to find a purchaser able and willing to buy, on terms stated in advance by the owner, and in which the owner promises to pay a specified commission for the service. This is an offer by the owner, the broker's power of acceptance to be exercised by the actual rendition of the requested service. Here the only contemplated contract between the owner and the broker is a unilateral contracta promise to pay a commission for services rendered.
Cases are very numerous in which the owner, after the broker has fully performed the requested service, fails to make conveyance to the purchaser and refuses to pay the commission. Such a refusal is not the revocation of an offer; it is the breach of the fully consummated unilateral contract to pay for services rendered. If the requested service is merely the production of a purchaser able and willing to buy on definitely stated terms, the broker has a right to his commission even though the owner at once refuses to accept the purchaser's offer." 1 Corbin, Contracts § 50 at 199 (1963).
Under classic contract theory, an offer may invite a return promise, an act of performance or forbearance. McLaughlin v. Stevens, 296 F.Supp. 610 (D.R.I.1969). Thus, an offer to pay a commission to a broker upon production of a purchaser is an offer to enter into a unilateral contract and the offer is for an act to be performed. Marchiondo v. Scheck, 78 N.M. 440, 432 P.2d 405 (1967). The owner promises to pay a commission for the services rendered of producing a purchaser. Corbin, supra at 199; see McLaughlin, supra at 613.
The defendant argues that there is sufficient evidence in the record to support the finding that the contract was illusory whether unilateral or bilateral in nature. Basically, defendant claims plaintiff did not promise to perform any services under the contract. The defendant, however, also contends the broker did not perform under the contract and that the finding that plaintiff undertook to do nothing was not clearly erroneous. Conversely, plaintiff contends that, in fact, it did undertake to do something and that it delivered a purchaser for defendant's property. The plaintiff also contends that it promised to afford its office facilities to defendant as part of the brokerage agreement. Thus, each party has advanced arguments why it should prevail regardless of whether the contract is bilateral or unilateral in nature.
The trial justice apparently believed that the brokerage agreement was bilateral in nature because he described the contract as "illusory." We conclude, however, it is unnecessary to address the question of whether a bilateral contract existed because we believe that plaintiff demonstrated a right to relief under the theory of performance under a unilateral contract.[2]
We recognize the principle generally expressed, that the broker has the burden of proving by a fair preponderance of the evidence that he produced a purchaser ready, willing and able to buy on the seller's terms. McLaughlin, supra; Avedisian v. Gasparian, 86 R.I. 423, 135 A.2d 837 (1957). In this case, however, the trial justice improperly interpreted the brokerage agreement and never determined whether plaintiff met the burden of proof under the aforementioned standard.
Nevertheless, from the testimony presented to the trial justice prior to the motion to dismiss under Rule 41(b)(2), we *957 conclude that plaintiff had made out a prima facie case for recovery under the legal standards hereinbefore enunciated. Thus, the trial justice could not upon such a record correctly grant the motion to dismiss.
Consequently, the case must be remanded to the Superior Court to allow the defendant to present evidence, if he chooses to do so, and to allow the plaintiff to rebut such evidence. If the trial justice who previously presided is unavailable, or if that trial justice deems necessary, the parties may be given a new trial. See 5 Moore, Federal Practice ¶ 41.13[2] at 41-183 to -185 (1978).
The plaintiff's appeal is sustained, and the case is remanded to the Superior Court for proceedings consistent with this opinion.
NOTES
[1] The defendant purchased this lot in 1971, and on January 11, 1973, conveyed it to a corporation which he solely owned, F. T. Realty, Inc. The fact that the defendant conveyed the lot to F. T. Realty, Inc. does not relieve the defendant from liability for the broker's commissions. Judge v. Roy, 90 R.I. 29, 153 A.2d 522 (1959). At trial, the defendant testified he was the sole owner and shareholder of the corporation and that there was "no difference" between himself and the corporation.
[2] We reserve, for a concrete case, resolution of issues which might be presented if the property had been sold by a person other than the plaintiff during the period of the contract or within 60 days thereafter.