DECISION
Before the Court is plaintiff Cherry Semiconductor's motion for summary judgment. Defendant Aptix Corporation objects to the motion. Jurisdiction is pursuant to R.C.P. 56.
Plaintiff, Cherry Semiconductor Corporation (hereinafter "CSC") is an East Greenwich company that manufactures integrated circuits. Aptix Corporation (hereinafter "Aptix") is a corporation with its principal place of business in San Jose, CA, in the business of designing, developing and selling certain multichip module and board products known as field programmable interconnect components ("FPIC's"). As part of its business, Aptix requires "wafers" used in its products to be "bumped." Bumping is a process wherein soldered materials are applied to wafers that in turn allow for the adhesion of the integrated circuits built on the wafer, to another item in time. (Affidavit of Amr. Mohsen 93)
Beginning in 1992, after being solicited by CSC, Aptix sent blanket purchase orders to CSC to obtain bumping services for Aptix's wafers. (Id. at 95) From 1992 to mid-1994, CSC delivered "bumped" wafers to Aptix, as per Aptix's purchase orders. (Affidavit of Walter F. McMann at 3, Plaintiff's Exhibits A1, A2, B1-B6) In 1992, the parties entered into a written agreement involving the development and manufacture of FPIC's, called the "Development and Manufacturing Agreement." (See
Defendant's Exhibit A.) In 1994, a dispute arose between the parties. As a result of this dispute, CSC stopped performing bumping services; Aptix refused to pay. Aptix alleges in its affidavit that on or about August 16, 1994, the parties agreed that if Aptix made a payment in the amount of $20, 615.00 to CSC, CSC would complete the bumping services. (Affidavit at 9-14) CSC alleges that it completed services and that Aptix issued a check for $20, 615.00 to pay for completed bumping services, but then stopped payment on the check. (Plaintiff's Affidavit at 6 and 7) To this date, CSC refuses to return Aptix's wafers worth over $40,000.00, while Aptix refuses to make payment to the plaintiff.
As a result of this stalemate, the parties are before this Court on CSC's motion for summary judgment.
Standard for Summary Judgment
It is well-settled that in order for a contract to be deemed valid and enforceable, the parties must express a mutual intent and a mutual assent to be bound. Smith v. Boyd, 553 A.2d 131
(R.I. 1989). That objective intent may be inferred from external factors such as the parties' conduct, the exchange of mutual promises, or the invitation of a return promise or act, or trade or services. Id., 553 A.2d at 131, 133; Judd Realty, Inc. v.Tedesco, 400 A.2d 952 (R.I. 1979).
In the case at bar, there is little dispute that the parties formed a valid contract regarding bumping services. Through Aptix's issuance of purchase orders beginning in 1992, and CSC's return act of providing bumping services, the parties manifested their intent to be bound as each purchase order created an offer ripe for acceptance. Timothy Hennigan Co. v. Anthony A. Nunes,Inc., 437 A.2d 1355, 1357 (R.I. 1981).
The question, therefore, is twofold: whether Aptix ordered and accepted CSC's services in question and whether a breach was committed. CSC alleges that Aptix ordered and received the wafers which were bumped in a timely fashion. CSC further alleges that Aptix stopped payment of the check issued to CSC in the agreed upon amount of $20,615, allegedly without explanation. Aptix, conversely, contends that CSC did not perform the bumping service in accordance with specifications made on the purchase order and allegedly agreed upon by the parties in a subsequent agreement. (Def. Aff. at 10-17) In addition, Aptix alleges that CSC is holding its wafer shortage by refusing to return them to California.
It is evident from the record, the affidavits, pleadings and memoranda included, that several genuine issues of material fact exist. The Court is unable to glean from these documents whether CSC has completed its performance under the bumping services contract, and if it has, whether the wafers have been accepted by Aptix. These are clearly questions of material fact. It is a fundamental tenet of contract law that a party's obligation to pay may be predicated upon the other party's obligation to render the expected performance. Newport Elec. Corp. v. RedevelopmentAgency, 116 R.I. 222, 351 A.2d 590 (1976). Therefore, if CSC has not performed, then Aptix's decision to stop payment would not constitute a breach.
In reviewing all the evidence in the light most favorable to the non-moving party, Aptix in this case, this Court finds that summary judgment is not appropriate. The affidavits present conflicting evidence. Whether CSC failed to perform and, thus, triggered Aptix's stop-payment order, or conversely, whether Aptix refused to pay for services completed and accepted, are genuine issues of material fact that must be resolved.
Accordingly, this Court denies plaintiff CSC's motion for summary judgment.