[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This case is before the Court for decision following a non-jury trial on a complaint by Allstate Drilling Company, d/b/a New England Foundation Stabilization Co. (Plaintiff), against Ava Martinelli (Defendant). Plaintiff seeks recovery under a construction contract claiming breach of contract and quantum meruit. Jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 FACTS AND TRAVEL
Ava Martinelli (Defendant) is the owner of a piece of property located at 54 Fairweather Avenue in Cranston, Rhode Island In attempting to restore her house so that she could sell it, Defendant contacted New England Foundation Stabilization Co. (Plaintiff) in February 2002 for it to structurally support, lift and underpin the existing foundation walls of her house. Plaintiff and Defendant entered into an agreement dated April 10, 2002, wherein the Plaintiff agreed to underpin the walls and place resistance piers under the foundation walls. The total cost of the project was set at $17,000, and Defendant paid a deposit of $8,500 before the work began. The contract provided that, should additional costs be required, the work would be brought to the attention of the Defendant "prior to initializing repairs for authorization."
During the process of sinking the piers, Plaintiff encountered unstable subsoil, preventing it from reaching a solid base. Plaintiff alleges that it contacted the Defendant to inform her of the condition and that extra piping material would be necessary. Plaintiff also claims that the Defendant directed Plaintiff to proceed. Defendant, however, denies these allegations and maintains that she was never informed of the extra expense. Thereafter, Plaintiff billed the Defendant $15,928.75, comprised of the remaining $8,500 and $7,428.75 for the extra piping material, which Defendant has failed to pay. Plaintiff instituted the instant action seeking recovery under breach of contract or, alternatively, quantum meruit.
This Court, sitting without a jury, heard the matter on November 18, 2003. Decision is herein rendered.
 STANDARD OF REVIEW
Rule 52(a) of the Rhode Island Superior Court Rules of Civil Procedure provides that "in all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon. . . ." R.I. Super. R. Civ. P. 52(a). In accordance with this authority in a non-jury trial, "the trial justice sits as trier of fact as well as law." Hood v. Hawkins, 478 A.2d 181, 184 (R.I. 1984). "Consequently, [s]he weighs and considers the evidence, passes upon the credibility of witnesses, and draws proper inferences."Id. "The task of determining credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." State v. Sparks, 667 A.2d 1250, 1251 (R.I. 1995) (citing Walton v. Baird, 433 A.2d 963, 964 (R.I. 1981)). "It is also the province of the trial justice to draw inferences from the testimony of witnesses. . . ." Id.; see also Rodriquesv. Santos, 466 A.2d 306, 312 (R.I. 1983) (the question of who is to be believed is one for the trier of fact). When rendering a decision in a non-jury trial, "the trial justice need not engage in extensive analysis to comply with this requirement." White v.Le Clerc, 468 A.2d 289, 290 (R.I. 1983). Thus, "even brief findings will suffice as long as they address and resolve the controlling factual and legal issues." Id.
 BREACH OF CONTRACT
Plaintiff argues that Defendant has breached the contract by not paying the balance of $15,928.75, which includes the cost of extra work beyond the original contract price. When interpreting a contract, the Court initially examines the precise language of the agreement in order to ascertain whether the meaning and intent of the parties is clear. Contract language is assigned its ordinary, dictionary meaning. Dudzik v. Leesona Corporation,473 A.2d 762, 765 (R.I. 1984). Thus, when the contract is clear on its face, it is the duty of the court to interpret it as a matter of law. "Clear and unambiguous language set out in a contract is controlling in regard to the intent of the parties to such contract and governs the legal consequences of its provisions." Dudzik, 473 A.2d at 765 (citing Chapman v.Vendresca, 426 A.2d 262, 264 (R.I. 1981); Fireman's FundInsurance Co. v. E.W. Burman, Inc., 120 R.I. 841, 391 A.2d 99, 102 (R.I. 1978)). Contract interpretation becomes a matter of fact only when the pertinent language is ambiguous or admits of more than one meaning. Judd Realty, Inc. v. Tedesco,400 A.2d 952, 955 (R.I. 1979) (citing Russolino v. A.F. Rotelli Sons,85 R.I. 160, 128 A.2d 337, 340 (R.I. 1957); Johnson v. Kile Morgan Co., 49 R.I. 99, 140 A. 3, 6 (R.I. 1928)). Ambiguous contract terms are to be construed against the drafter. JuddRealty, 400 A.2d 952 at 952.
In interpreting the language on page two of the contract between Plaintiff and Defendant, the Court is satisfied that the meaning is clear and unambiguous. The contract explicitly states that "[a]ny remedial repairs or preparation not deemed normal installation practice" will be brought to the Defendant's attention "prior to initializing repairs for authorization." Thus, the Plaintiff, if not in compliance, will be unable to recover any damages if it did not follow the proper procedure set forth in the contract. See Women's Development Corp. v. Cityof Central Falls, 764 A.2d 151, 158 (R.I. 2001) (party's material breach of contract justifies non-breaching party's subsequent nonperformance of contractual obligations); seealso Westates Constr. Co. v. Cheyenne, 775 P.2d 502, 504 (Wyo. 1989) (finding defendant's failure to comply with contractual procedures deprives it of a right to compensation).
John Pray, an employee of the Plaintiff, testified that he called the Defendant to inform her of the extra work and that she approved the extra expense. Defendant, however, testified that that there were numerous delays in the project and that she was neither advised of the extra work and costs nor did she ever authorize the additional work. "It is incumbent upon the trier of fact to assess the credibility of witnesses and to determine the weight to be afforded such testimony." Vargas Mfg. Co. v.Friedman, 661 A.2d 48, 53 (R.I. 1995). Sitting as the trier of fact, this Court finds Defendant's version of the events more credible than that of the Plaintiff's witnesses. Defendant's whole account rings true. Accordingly, this Court finds the Plaintiff breached the contract by not informing the Defendant of the extra work and costs before proceeding.
Although it may be necessary for a party to a contract to have the ability to make small modifications in order to stay on schedule and accommodate the unexpected, "no party should be allowed to unilaterally and materially alter the agreement reached between the parties. Mutual assent or a bilateral agreement must be obtained before any party's obligations under a construction contract are altered." Steven G.M. Stein,Construction Law § 4.02[2] (2003). In the instant case, Defendant's obligation to pay increased from the contract price of $17,000 to $24,428.75, an increase of close to forty-four percent. This drastic change in the price materially altered the agreement between the parties and went beyond the scope of the provision providing for changes. See Fondedile, S.A. v. C.E.Maguire, Inc., 610 A.2d 87, 92 (R.I. 1992) (holding contractor not entitled to extra costs where strict compliance with express clause providing for modification is necessary); see alsoVaccaro v. Smith, 779 S.W.2d 193, 195 (Ark. App. 1989) (refusing to allow recovery on excess costs where the estimate was "culpably below the actual cost of the job"). Such a severe increase in price cannot be considered a "remedial" repair contemplated by the contract as Plaintiff's witness, John Pray, testified that the depths reached in the project were beyond normal. However, Defendant cannot be held responsible for work done without her knowledge or permission and which was well beyond the scope of the contract. Edward R. Marden Corp. v.United States, 442 F.2d 364, 370 (Ct. Cl. 1971) (increased costs of double the contract price are deemed to have materially altered the nature of the contractor's undertaking and result in a breach). Accordingly, Plaintiff's breach of contract claim fails.
 QUANTUM MERUIT
Plaintiff also seeks recovery under quantum meruit, claiming that Defendant will be unjustly enriched if Plaintiff is precluded from recovery. Under Rhode Island law, a plaintiff is entitled to recover under a quantum meruit theory if plaintiff conferred a benefit on the defendant; defendant accepted the benefit; and under the circumstances, it would be inequitable for the defendant to retain such benefit without payment of the value thereof. Fondedile, S.A. v. C.E. Maguire, Inc., 610 A.2d 87, 97 (R.I. 1992).
In the instant case, Plaintiff has not met its burden that it is entitled to recovery under such a theory. First, Defendant did not receive value for the services. There were numerous delays with the project, and Defendant was constantly putting pressure on the Plaintiff to finish. Further, Defendant was not properly advised of the extra work. It would be inequitable to require Defendant to pay for services that she was not even aware were being performed. See Webster Indus. v. Northwood Doors, Inc.,234 F. Supp.2d 981, 992 (N.D. Iowa, 2002) (finding plaintiff cannot recover under quantum meruit where defendant was not aware of project until it was completed). Accordingly, Plaintiff is precluded from recovery under a quantum meruit theory.
 CONCLUSION
After review of the entire record, the Court finds that the Plaintiff failed to carry its burden in showing by a clear preponderance of evidence that it was entitled to recover against Defendant for either breach of contract or quantum meruit. Accordingly, judgment shall enter for the Defendant.
Counsel shall submit appropriate judgment for entry in accordance with this decision.