214 A.2d 849.

MURRAY GARTNER *et al. vs.* CHARLES A. HIGGINS.

NOVEMBER 30, 1965.

PRESENT: Roberts, Paolino and Joslin, JJ.

ROBERTS, J. This action of assumpsit to recover a sum of money paid to the defendant as a fee under a brokerage contract was tried to a justice of the superior court sitting with a jury and resulted in a verdict for the plaintiffs in

the amount of $1,500. The court ordered a new trial on the issue of damages only unless the plaintiffs filed a remittitur of all of the verdict in excess of $1,000. The remittitur was filed, but the defendant proceeded to prosecute to this court his exceptions to certain evidentiary rulings and to a denial of his motion for an unconditional new trial.

It appears from the record that plaintiffs, owners of a dwelling house located in the town of Narragansett, entered into an exclusive listing agreement, so called, with defendant on April 19, 1961. They therein granted to defendant the exclusive right "to sell or to contract to sell said real estate * * * for the price and upon the terms herein stated, and I hereby agree to furnish complete abstract of title to said property and to execute a deed in due form of law, conveying a marketable title to same * * * to such persons as you shall have sold or agreed to sell the same, and for your services I hereby agree to pay you the rate of commission * * *." The sale price set out in the instrument is $26,500, and the rate of commission agreed upon was set at 6 per cent thereof.

It is not disputed that defendant thereafter produced as potential purchasers of the property John L. Stein and his wife Ethelyn, hereinafter referred to as the Steins, or that on May 26, 1961 plaintiffs, in writing, agreed to sell and the Steins to buy the property at a purchase price of $22,500. Upon the execution of that agreement the Steins made a down payment of $1,000, leaving a balance due of $21,500. In this agreement for the sale and purchase of the property plaintiffs agreed to pay defendant a commission of 6 per cent of the sale price therein agreed upon. It is not disputed that the $1,000 part payment made by the Steins was retained by defendant as payment in part of his commission and is the subject matter of the instant suit.

The defendant contends primarily that prejudicial error inhered in the court's ruling admitting into evidence testi-

mony relating to the financial ability of the Steins to purchase the property under the terms of the listing agreement of April 19. He contends, as we understand him, that he had fully performed under that agreement and became entitled to the commission provided for therein at the time plaintiffs and the Steins executed a contract for the sale and purchase of the property on May 26. He argues that his procurement of a prospective purchaser who executed the latter agreement constituted full performance by him under the listing agreement, whether or not the sale was completed subsequently. In short, he urges that performance or non-performance of the contract of purchase by the prospective buyer is immaterial on the question of his right to the commission provided for in the agreement.

What constitutes sufficient performance under a brokerage agreement to entitle the broker to a commission is well settled in this state. Such entitlement accrues to the broker when he produces a prospective purchaser who is ready, able and willing to purchase the property at the price and on the terms set by the seller. *Wine* v. *Lovett*, 80 R. I. 425; *Avedisian* v. *Gasparian*, 86 R. I. 423. Under such agreements the broker undertakes to produce a prospective purchaser who is financially able to complete the purchase. *Mangano* v. *Rooney*, 77 R. I. 324. There, relying upon the rule stated in *Butler* v. *Baker*, 17 R. I. 582, we made clear our adherence to the rule that a broker, when he produces a prospective purchaser, impliedly represents to the seller that such purchaser is financially able, as well as ready and willing, to complete the purchase.

In *Mangano* v. *Rooney, supra,* we rejected the basic contention of defendant here, that is, that he becomes entitled to a commission when the agreement to buy and sell is executed and a deposit paid, notwithstanding that the purchaser procured by him proves to be financially unable to purchase in accordance with such contract. The defendant

here contends vigorously that the rule to which we there adhered is contrary to the great weight of authority and should be abandoned in this jurisdiction. In *Valois* v. *Pelletier,* 84 R. I. 176, it appears that this court agreed that the rule stated in *Mangano* v. *Rooney, supra,* is not in accord with the weight of authority.

However, now, as then, we are of the opinion that the rule is inherently sound and that the interests of justice in these situations will be best served by its retention. In *Gettler* v. *Caffier,* 92 R. I. 19, we stated that a broker's entitlement to a commission rests largely on a showing that he was the effective or procuring cause of the sale, and we are unable to agree that a broker can be a procuring cause of a sale when the prospective purchaser procured by him was in fact financially unable to complete the purchase.

We are constrained also to note that we are unable to agree that defendant performed under the listing agreement of April 19. That was not an ordinary brokerage agreement but, as we said in *Gettler* v. *Caffier, supra,* was a special contract of employment. Pursuant to the terms of the April 19 agreement, defendant was required specifically to procure a purchaser for the property at the price fixed therein, namely $26,500. His procurement of a prospective purchaser willing to purchase the property at a price of $22,500 is not performance under that contract, and consequently his entitlement to a commission could not be held to have vested in him by virtue of performance thereunder.

However, whether his claim to entitlement rests on the special employment agreement or on his production of a prospective purchaser agreeing to purchase at the price and on terms other than those set by the seller, his right thereto will be tested on the proposition that in producing a prospective purchaser, he impliedly represented that he was financially able to complete the purchase. We conclude then that no error inhered in admitting into evidence testi-

mony as to the Steins' ability financially to complete the purchase.

We turn to defendant's contention that even under the rule to which we continue to adhere he is entitled to the commission because plaintiffs did not rely solely on his representations as to the Steins' financial ability but entered into the agreement of May 26 on the basis of their own evaluation of the ability of the Steins to pay the purchase price. It is true that in this state there is a well-recognized exception to the rule concerning a broker's entitlement to commissions. This exception may be invoked where it is established that the vendor did not rely on the implied representation of the broker concerning the financial ability of the proposed purchaser but entered into the contract for the sale of the property after an exercise of his independent judgment of the customer's ability to pay the purchase price. *Valois* v. *Pelletier, supra.*

In support of his contention defendant argues that there is in the record evidence which establishes plaintiffs' reliance, at least in part, on their own evaluation of the Steins' ability to pay. The evidence to which he directs our attention is that plaintiffs entertained the Steins and defendant at their home where, after dinner, they negotiated "more or less" about the purchase price. This testimony indicates it was a final agreement between the parties as to the figure of $22,500 and that thereafter the Steins informed plaintiffs as to the identity of their bank and inquired concerning restrictions in the building code affecting alterations to the property. The testimony further indicates that plaintiffs questioned the adequacy of a down payment of $1,000 but were assured by defendant that this was adequate.

However, we cannot accept defendant's contention that such evidence is conclusive that plaintiffs, in entering into the agreement of May 26, relied on their own judgment of

the ability of the Steins to pay the purchase price. If we were to assume, as the trial justice would not, that such evidence is susceptible of reasonable inferences tending to prove that plaintiffs did themselves evaluate the ability of the Steins to pay, it is clear that it is susceptible also of reasonable inferences that the conversations engaged in that evening went only to negotiations as to the amount of the purchase price to be agreed upon. Obviously, the situation is one in which, at most, contrary reasonable inferences could be drawn from the testimony as it stands. The question then is one of the acceptance of inferences from evidence that, while being reasonable, tends to establish contrary fact issues. In *Labbe* v. *Hill Brothers, Inc.*, 97 R. I. 269, 197 A.2d 305, we noted that the mere susceptibility of evidence to inferences in which probability inheres does not preclude a trier of fact from accepting one of such inferences as being probative of a fact in issue. This principle of judicial fact determination is, in our opinion, peculiarly applicable in the instant case.

We are of the opinion then that the trial justice did not err in admitting into evidence testimony relating to the ability of the Steins to pay the purchase price. The issue is relevant and material on the question of liability for brokerage commissions under the law as it has long stood in this jurisdiction and to which principle we now state our continued adherence. Because we take this view, it is our further opinion that no error inhered in the exclusion by the trial justice of testimony going to the ability of plaintiffs to convey a marketable title, defendant having failed to meet the burden imposed upon him to establish that he had procured a purchaser who had financial ability to perform under the terms of the contract of May 26.

The defendant's contention that the trial justice erred in denying his motion for an unconditional new trial is without merit. An examination of the decision on that mo-

tion makes it clear that he exercised his independent judgment and passed upon the weight of the evidence and the credibility of the witnesses. Where this obligation of a trial justice has been met, it is the burden of the moving party to establish that the trial justice, in denying the motion, was clearly wrong in that he overlooked or misconceived evidence controlling on a material issue in the case. We cannot say in the circumstances here that the defendant has met the burden of establishing that the trial justice was clearly wrong.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict as reduced by the remittitur.

*James O. Watts*, for plaintiffs.

*William C. Waring, Jr., Ira A. Marcus*, for defendant.