Robert H. McLAUGHLIN and Earl C. Sylvander

v.

Roger L. STEVENS.

Civ. A. No. 3531.

United States District Court
D. Rhode Island.

Feb. 13, 1969.

F. Monroe Allen, Providence, R. I., for plaintiffs.

Knight Edwards, Edwards & Angell, Providence, R. I., for defendant.

## OPINION

PETTINE, District Judge.

This is a diversity action in which the plaintiffs, both citizens of Rhode Island, seek compensation of $300,000 from the defendant, a citizen of New York, for brokerage services alleged to have been rendered in full to the defendant.

## THE BACKGROUND AND POSTURE OF THE CASE [1]

■ At the beginning of 1958 it became known in selected banking and financial circles in Providence and elsewhere that the Industrial National Bank and certain other individuals were interested in selling over 55,000 shares of an important Providence retail outlet and broadcasting company, which shares then constituted majority control of that company. Three persons in Providence took it upon themselves to seek to become commission brokers for that sale by finding a purchaser for the stock and presenting that purchaser to the Industrial National Bank. Those three persons, Earl Sylvander, Robert H. McLaughlin, and Jack Rosenblatt, also had some acquaintance with Roger Stevens, a financier and redeveloper from New Haven who desired to break into the Providence area finance and redevelopment market.

Believing that Stevens and the Industrial National Bank were made for each other, and anticipating substantial commission fees, McLaughlin, Sylvander and Rosenblatt decided to try to bring the parties together to consummate the sale.

This was not the first time the Industrial National Bank had dealt with McLaughlin, Sylvander, and Rosenblatt. Nor was it the first time that the Bank had contemplated selling the Outlet Co. stock. Because of previous mutually dissatisfactory dealings, both the Bank and the potential brokers operated on

1. Because this is defendant's motion for summary judgment all inferences are drawn in plaintiffs' favor. In addition, at subsequent places in the decision, the court highlights any alleged genuine issue of material fact.

a highly tentative, suspicion-ridden basis. In fact, the Bank made it unmistakably clear that it would not be responsible for paying the brokers any commission. (Letter of Kenneth Hill of February 13th to the Plaintiffs) For their part, the brokers were satisfied, because they preferred to look to Roger Stevens, the potential purchaser, for their commission.

In January or February of 1958, Stevens sent his agent, one Nicholas Wood, from New Haven to Providence to look over the Outlet Co. and to analyze the feasibility and profitability of the purchase. The brokers did in fact put Wood into contact with the Bank, and progress was made toward consummation. The brokers allege that an agreement was reached with Wood, acting as agent for Roger B. Stevens, by which they were promised a finder's fee by Stevens in the event that the Bank agreed to sell the Outlet Co. stock.

Subsequent to Wood's trip to Providence, and as progress continued to be made toward the sale of the stock, Roger Stevens sent one Levy, an attorney, to Providence to negotiate the transaction with the Bank. The Bank told Levy that in so far as its records showed the three brokers to be Mr. Stevens' representatives, that it would not negotiate with him until a release was obtained from the brokers. On that day, October 30, 1958, Levy extracted from the brokers, Sylvander, McLaughlin, and Rosenblatt, a curious agreement, the precise meaning of which is presently one subject matter of this litigation.

On November 10th, 1958, the Bank and Stevens executed an option by which Stevens was given a right to purchase the Outlet Co. stock. Stevens exercised the option to purchase but the Outlet Company stocks was never sold to Stevens or his nominee, because, *inter alia*, the Supreme Court of Rhode Island upheld the granting of a preliminary injunction against the sale in Sinclair v. Industrial National Bank, 89 R.I. 461, 153 A.2d 547 (1959).

On the basis of these facts, the plaintiffs claim that they are entitled to a finder's fee of $300,000. The defendant has moved for summary judgment pursuant to Rule 56(b). He argues that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law because either (1) under the terms of the October 30th agreement, the plaintiffs are entitled to nothing or (2) on a quantum meruit basis, the plaintiffs are entitled to nothing. The plaintiffs counter by claiming that several material facts are in issue, that the October 30th letter is not the basis of their contractual relation with the defendant, and that under the terms of their contractual relation with the defendant all elements of their side of the bargain were met and they are, hence, entitled to their finder's fee.

With respect to the question of whether an oral agreement to pay a finder's fee was made, there is no genuine issue of fact. The plaintiffs have not submitted to the court or placed on record a letter of February 15 or 16, 1958 which the plaintiff McLaughlin claimed, on deposition, to have in his possession or control. Absent that letter, the parties must limit their inquiries to the pleadings, documents and depositions which are presently on the record. Unsupported allegations in either the plaintiffs' complaint or brief carry no weight on a motion for summary judgment. See 6 Moore's Federal Practice paragraph 56.15(2) at p. 2332 and paragraph 56.11 (1) at p. 2150 and note 8. Consequently, the plaintiffs and defendant must focus their attention on the deposition testimony of the plaintiffs as it relates to the January and February dealings between Mr. Nicholas B. Wood, as agent for the defendant, and the plaintiffs. (Deposition of Earl Sylvander, pp. 14–15; Deposition of Robert McLaughlin, pp. 13–28.) On the basis of that testimony, the plaintiffs claim that a contract was created; the defendants argue to the contrary.

The court can find no specific R. I. authority governing this question

and therefore turns to general principles of contract formation. It goes without saying that a manifestation of mutual assent by the parties to an informal contract is essential to the formation of that contract. Restatement of Contracts § 20. Moreover, the manifestation of mutual assent almost invariably takes the form of an offer or proposal by one party accepted by the other party or parties. Restatement of Contracts, § 22. And an offer is a promise which is in its terms conditional upon an act, forbearance or return promise being given in exchange for the promise or its performance. Restatement of Contracts, § 24. If, then, a contract was created by the January or February oral exchanges between Wood, as agent for Stevens, and the plaintiffs, an offer must be delineated. The plaintiffs point to the following language of the plaintiff McLaughlin's deposition:

"If I don't get paid by the Outlet Company, then I was entitled to a finder's fee. I said 'By whom?' He (Wood) said, 'By the buyer.'"

It is difficult, in the first instance, to see the promissory made of the alleged offeror's language. But it is even more difficult to see what act, forbearance, or return promise was being sought by the alleged offeror. The words quoted simply leave too much to the process of implication. Hence, not only do they raise a grave question with respect to the existence of the offer but also they invite consideration of whether they satisfy the rule that an offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain. Restatement of Contracts, § 32. On the basis of the deposition of the plaintiffs it is entirely unclear what the plaintiffs were to do, whether, how and in what amounts they were to be paid, and whether there were any conditions to their receipt of payment. Finally, there are indications in the deposition of the plaintiffs that these oral communications were mere preliminary ne-

gotiations, and that the defendant wanted a written statement from the plaintiffs setting out the terms and condition of the agreement. See Restatement of Contracts, § 25. While the court thinks that each of these objections is a sufficient barrier in and of itself to the plaintiffs' claims as to the creation of an oral contract, certainly all of them taken together present an insuperable obstacle to the plaintiffs. Accordingly, on the basis of undisputed facts, and drawing all inferences favorable to the non-movant plaintiffs, the court concludes that, as a matter of law, no oral contract was created.

■ It remains to be considered whether the plaintiffs can maintain their action on any other basis. In this regard, the defendant has argued that "the letter agreement of October 30, 1958, executed by the plaintiffs is valid and binding upon them, and since a sale of the stock was never consummated, by the terms of the agreement, plaintiffs are not entitled to recover a finder's fee or commission from the defendant." (*Defendant's Brief at Pg. 7*)

The first question is whether the agreement of October 30th constitutes a valid contract. The plaintiffs argue that it is in reality an agreement of compromise unsupported by consideration. If plaintiffs could show a prior agreement, then much could be said for their interpretation of the October 30th letter. However, in the absence of a prior oral agreement, this court thinks that the October 30th agreement is supported by consideration. At the same time the court declines to accept the defendant's argument that the letter is a valid unilateral contract by which the plaintiffs promise to accept $7500 in return for certain acts of the defendant —namely, continuance of negotiations. Rather, the agreement should more realistically be read as plaintiffs' promises to accept $7500. as full payment for their services and their promises, by implication, not to attempt to obtain anything more than that, and their promises to execute and deliver releases

to Stevens *in return for* Stevens' promises to continue to negotiate and his promise to pay them $7500 if the sale should be consummated. By this interpretation of the October 30th letter, a valid and binding *bilateral* contract was created. In this connection, the language of the Restatement of Contracts, § 31 is especially important:

"In case of doubt it is presumed that an offer invites the formation of a bilateral contract by an acceptance amounting in effect to a promise by the offeree to perform what the offer requests * * *"

Given the existence and validity of the October 30th letter agreement as a bilateral contract, it must be concluded that pursuant to the terms of that conract the plaintiffs are entitled to no fees. The letter states, in particular, that no fee or commission shall be paid unless "said sale of said stock shall be actually consummated by transfer of said stock to said Stevens or Stevens Development Corporation or to any nominee or assignee." None of those events having occurred, it must be held that no payment need be made.

The plaintiffs have argued, with respect to the October 30th agreement, that there are several genuine issues of material fact. In particular, they assert that it is disputable whether defendant honored the contract by continuing negotiations with the bank or by assigning his rights under the contract of sale, finally made as of November 10, 1958, to a third person, whether the Bank was ready, willing, and able to sell and whether plaintiffs produced a ready, willing and able seller. Plaintiffs arguments in these respects must fall for two basic reasons. First, they fail to distinguish the difference between disputed questions of fact and those of law. Second, they are simply incorrect, as a matter of law. With respect to the

first reason, it must be made clear that no one here disputes the facts. Defendant concedes that an assignment of his rights under the November 10, 1958 contract was made to a third person. Defendant likewise concedes that a preliminary injunction has been imposed upon the Bank. The dispute here is then not one of fact, but of the application of law to undisputed fact. With respect to the second reason, the court concludes that the agreement of November 10, 1958 indicates, in and of itself, the continuance of negotiations after October 30, 1958; that the assignment by defendant to some third person is contemplated by the letter of October 30, 1958, and in any case is not particularly relevant because no sale whatsoever of the stock has been consummated, either to defendant or to his nominee or assignee; and that whether the Bank was ready, willing, and able to sell is likewise irrelevant under the October 30th agreement, because it required actual transfer of the stock.

Finally, the court considers whether, even assuming either an oral agreement prior to October 30th, 1958[2] or the invalidity of the October 30th agreement, plaintiffs can recover. Defendant argues that plaintiffs failed to produce a seller ready and willing and able to sell and hence are not entitled to any fees as a matter of law. Plaintiffs argue that the seller was ready, willing, and able to sell and hence, regardless of whether actual consummation of the sale by transfer of the stock was achieved, plaintiffs should be paid.

The court's first inquiry here is whether the law of Rhode Island requires actual consummation of the contract of sale before a brokerage fee must be paid or whether the broker must be paid as soon as he has produced a ready, willing, and able prospect. Obviously, this question assumes the absence of a

---

2. If an oral agreement prior to October 30th, 1958 could be established, for purposes of this part of the case, it must be determined that such agreement specified nothing with respect to terms or conditions of payment, because there is no scintilla of evidence on this record concerning such terms or conditions.

specific contractual provision setting out the terms of the parties' bargain.[3]

No doubt, the rule is clear in this state, as well as in others, that a broker who produces a buyer ready, willing and able to buy is entitled to his commission notwithstanding failure to sell by the seller. Wine v. Lovett, 80 R.I. 425, 97 A.2d 591; Morrow v. Gledhill, 43 R.I. 277, 111 A. 712 (1920); Avedisian v. Gasparian, 86 R.I. 423, 135 A.2d 837; Gartner v. Higgins, 100 R.I. 285, 214 A.2d 849 (1965). Moreover, it is likewise clear that financial, or, possibly, other inability to purchase on the part of the proffered buyer frees the seller of any commission obligation. See Gartner v. Higgins, 100 R.I. 285, 214 A.2d 849 (1965). However, this case is not one where the broker seeks his fee from the seller for having produced a ready, willing, and able buyer; rather, here, the broker seeks his fee from the buyer for having found a seller. The question is somewhat more difficult in this context because a primary rationale which permitted non-payment of the commission in those cases—namely, that the seller does not possess the funds from which he was to pay the commission, i. e., the buyer's money payments—is not present here. In this case, the buyer is paying, out of pocket, not only for the property purchased but for the services purchased from the broker. Even given this distinction, however, and the consequent lack of controlling authority, the fact remains that the plaintiffs produced for the buyer a seller who, by virtue of an intervening injunction suit, was unable to sell. As a matter of fairness, this court thinks that payment of a brokerage fee should be conditioned on ability of the party proffered to go forward. In the absence of any specific language in the contract of employment, or in a quantum meruit case, the risk that the proffered party will be unable to go forward should be placed on the broker. Hence, in the circumstances of this case, the plaintiffs must be judged to have incurred the risk of the Bank's inability to complete the sale. Consequently, even if there was a pre-October 30th oral agreement, or even if the plaintiffs properly allege a quantum meruit cause of action, they are not entitled to payment because their seller was unable to sell.

For all the above reasons, the motion for summary judgment is granted. Defendant will prepare an order accordingly.