DECISION
This matter is before the Court on several post-trial motions made by each of the parties to this dispute. Plaintiff Michael C. Normandin ("Plaintiff") and Caetano Real Estate ("Third Party Defendants") have each filed a motion seeking attorney's fees. Third Party Defendants have also filed a motion to attach the property of Defendants Cheryl A. Gauthier, CAG Land Corporation, and CAG Hospitality Corporation ("Defendants"), to secure the broker fees which the Court had awarded in their favor. Defendants have filed a motion to amend judgment or in the alternative, for a new trial, claiming that the Court's prior decision in this matter is strewn with legal error. For the reasons set forth below, Plaintiff's motion for attorney's fees is denied, and Third Party Defendants' motion for attorney's fees is granted in part and denied in part. Third Party Defendants' motion to attach is denied. Defendants' motion to amend judgment is granted to the extent that Plaintiff shall not be entitled to prejudgment interest on his award based upon restitution. On all remaining grounds, Defendants' motion is denied.
 Facts and Travel[1]
Defendants own a piece of commercial property located at 86 Waterman Avenue, North Providence, Rhode Island. In an attempt to sell this property, Defendants entered into a listing agreement with Third Party Defendants. The term of the listing agreement was from February 13, 2003 through August 31, 2003 and provided that Third Party Defendants would be entitled to a 6% commission if they "procure[d] a buyer, or if the subject property is sold or exchanged by [Third Party Defendants], by [Defendants], or by anyone else, during the term of this Agreement." In March, 2003, Plaintiff made an offer on the subject property and paid $1,000 earnest money to Third Party Defendants as escrow agent. Subsequently, on May 8, 2003, Plaintiff and Defendants entered into a written Purchase and Sale Agreement ("Agreement") whereby Plaintiff agreed to buy the real estate. At that time, Plaintiff also paid an additional deposit to Third Party Defendants in the amount of $27,500.
Within the Agreement, Defendants warranted that to the best of their knowledge there were no underground storage tanks ("UST") upon the property and that the property had not been used to treat, deposit, or store any hazardous substances. The Agreement further provided Plaintiff with a forty-five day period in which to inspect the premises. The parties thereafter executed several extension agreements in which the closing date was subsequently set for September 30, 2003.[2]
During the time period in which Plaintiff and Defendants were executing the extension agreements, Plaintiff commenced arrangements to obtain financing to purchase the property. On September 5, 2003, Plaintiff received a commitment letter from Pitney Bowes Small Business Lending LLC ("Pitney Bowes"), which agreed to loan Plaintiff $300,000, subject to certain conditions being satisfied. Plaintiff also secured a commitment letter from Pawtucket Credit Union on September 12, 2003, which conditionally agreed to lend Plaintiff $250,000. Acting upon these letters, one of Plaintiff's lenders hired Puliafico Environmental, an environmental consultant, who inspected the property on September 18 and 26, 2003.[3] The inspection revealed the presence of a vent pipe protruding from the ground, and Puliafico indicated that such was the type of pipe normally connected to USTs. Plaintiff thereafter requested Defendants' permission to conduct a small excavation to determine whether an underground storage tank was present. Defendants, however, refused to allow Plaintiff to conduct this further inspection and maintained that they did not know of any storage tank. As a result of not being able to excavate, the Plaintiff's lenders were unwilling to provide the financing to which they had committed themselves. Consequently, the parties did not close the sale as scheduled, with the Court below finding that it was the Defendants who refused to go forward with the closing.[4] (Decision at 7.)
On November 26, 2003, Plaintiff filed a complaint with the Superior Court, No: 03-6211, alleging that Defendants had breached the sales contract and requested "a monetary sum sufficient to compensate [Plaintiff] for the damages he has suffered." In the alternative, Plaintiff claimed that monetary damages would not be sufficient, as property is unique, and consequently, Plaintiff requested that the Court award specific performance, namely the conveyance of the subject property. Defendants responded by filing a counterclaim in which they alleged that Plaintiff was the party who breached the Agreement, that Plaintiff's breach of contract claim was frivolous, and that Plaintiff committed slander of title and abuse of process by filing a Notice of Lis Pendens on Defendants' property. Defendants also brought a third party complaint seeking a return of the deposit Third Party Defendants were holding. Defendants further asserted that Third Party Defendants breached the listing agreement by failing to adequately investigate Plaintiff's financial condition. Third Party Defendants subsequently filed a counterclaim against the Defendants/Third Party Plaintiffs, claiming that they were due their commission for procuring a ready, willing, and able buyer.
After a non-jury trial, the Court issued a decision on May 27, 2005 ("Decision"). The Court found that every contract contains an implied covenant to act in good faith and conduct fair dealing and that Defendants had breached this covenant by refusing to allow Plaintiff to investigate further as to the existence of a UST while simultaneously denying the existence of such a tank. Id. at 11. The Court further found that while Plaintiff had initially been a ready, willing, and able buyer, because the Defendants' actions had caused Plaintiff's financing to fail, Plaintiff was not a ready, willing, and able buyer at the time closing was scheduled. Id. at 12. Consequently, the Court denied Plaintiff's claim for specific performance; nevertheless, as Defendants breached the Agreement, the Court awarded Plaintiff restitution. The Court also denied Defendants' counterclaims and third party claims. Furthermore, because Defendants were found to be responsible for the closing's failing to occur, the Court held that Third Party Defendants were entitled to their commission. Defendants were ordered to bear the costs of the suit.
Following the May 27, 2005 Decision, Plaintiff and Third Party Defendants filed motions for attorney's fees.[5] Third Party Defendants filed a second motion, requesting to attach Defendants' property to secure the award in its favor. Defendants, meanwhile, filed a motion to amend judgment, or in the alternative a motion for a new trial, alleging that there are a number of legal errors in the May 27, 2005 Decision. These matters are now before the Court for decision.
 Analysis
1) Third Party Defendants' Motion to Attach
Third Party Defendants have moved to attach Defendants' property pursuant to G.L. 1956 § 10-5-2(c), to secure the payment of the award that was rendered on their behalf for their commission. Defendants oppose this motion arguing that a) The statute (§ 10-5-2(c)) requires a diligent search and affidavit that the party against whom attachment is sought cannot be found and b) There has been no necessity or other showing for issuance of an attachment on the real estate.[6]
Section 10-5-2 (c) provides:
 "If the plaintiff after diligent search and by affidavit avers that he or she does not know of the defendant's address, service on the defendant of the motion to attach may after order of the court be made by publication in some public newspaper, once, published in the town, city or county where the defendant's assets are situated. If there is no public newspaper published in the town, city or county where the defendant's assets are situated, then in some public newspaper published in the city of Providence. Provided, however, that in all actions where the plaintiff's claim against the defendant has been reduced to a judgment, the defendant's assets, including his or her personal estate and real estate, may be attached and may be subject to trustee process as set out in chapter 17 of this title in the same action in which the judgment has been entered."
Defendants' argument that an affidavit is required in this particular matter is misplaced, as Defendants have misconstrued the statute. According to this statute, while an affidavit is required under certain conditions, the affidavit requirement does not apply if the claim against the defendant has been reduced to a judgment. The statute is disjointed, with the portion regarding attachment when judgment has been rendered being separate from the portion of the statute requiring an affidavit. The statute specifically distinguishes the requirements by using the language "Provided, however." This language demonstrates the Legislature's intent to allow for attachment in the same action in which judgment has been entered, without the prerequisite affidavit and procedures of the preceding sentences in the statute having to be followed.
However, the Court finds Defendants' second argument in opposition to the motion to attach persuasive. Defendants argue that Third Party Defendants have not demonstrated a need for the attachment. Superior Court Rules of Civil Procedure Rule 4(m)(3) requires a demonstration of need and states:
 "The writ of attachment may be procured in blank from the clerk, shall be filled out by the plaintiff's attorney as provided in paragraph (2) of this subdivision, and shall be submitted to the court with a motion for its issuance. The motion shall be granted only upon a showing that there is a probability of a judgment being rendered in favor of the plaintiff and that there is a need for furnishing the plaintiff security in the amount sought for satisfaction of such judgment, together with interest and costs. . . . Super. R. Civ. P. 4(m)(3). (Emphasis added.)
In essence, there is a two-prong requirement: 1) Likelihood of success and 2) Need for furnishing security. Here, the Court finds that the first requirement for attachment has been satisfied by the judgment rendered in favor of the Third Party Defendants. The second requirement, however, has not been established, as this Court finds that there is no substantial evidence which indicates that attachment is necessary to preserve the Third Party Defendants' interest in the judgment. "Attachment for security reasons is appropriate when it appears likely that the plaintiff will have difficulty enforcing the judgment."Atlantic P.B.S. Inc. v. Long, 1994 R.I. Super LEXIS 74, *7 (Dec. 5, 1994) (citing Katz Agency, Inc. v. Evening News Ass'n,514 F. Supp. 423, 429 (1981)). As there is no evidence before this Court demonstrating that Third Party Defendants will have difficulty collecting their judgment if their motion to attach is not granted, in accordance with Rule 4(m)(3), said motion is hereby denied.
2) Plaintiff's Motion for Attorney's Fees
Plaintiff has filed a Motion for Attorney's Fees Pursuant to G.L. 1956 § 9-1-45, which reads as follows:
 "Attorney's fees in breach of contract actions. — The court may award a reasonable attorney's fee to the prevailing party in any civil action arising from a breach of contract in which the court:
 (1) Finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party; or
 (2) Renders a default judgment against the losing party."
As default judgment was not entered in this matter, in order for the Court to award Plaintiff attorney's fees, it must find that the Defendants failed to raise a justiciable issue.
The only argument this Court has received in support of Plaintiff's position occurred at the February 27, 2006 hearing when Plaintiff's counsel succinctly stated: "I think clearly the facts of this case warrant the awarding of attorney's fees." Defendants object to Plaintiff's motion for attorney fees, arguing that the contract between Plaintiff and Defendants does not contain a provision entitling Plaintiff to attorney's fees were Defendants to breach the agreement. Furthermore, Defendants argue that the Court had to resolve several justiciable issues when it rendered its Decision, and consequently, pursuant to §9-1-45 (1), attorney's fees are not warranted.
"Given a proper contractual, statutory, or other legal basis to do so, the award of attorney's fees rests within the sound discretion of the trial justice." Women's DevelopmentCorporation v. City of Central Falls, 764 A.2d 151, 162 (R.I. 2002) (citing Greensleeves, Inc. v. Smiley, 754 A.2d 102, 103
(R.I. 2000)). In other words, "attorneys' fees may not be appropriately awarded to the prevailing party absent contractualor statutory authorization." Kelly v. Town of Lincoln,874 A.2d 204, 214 (R.I. 2005). (Emphasis added.) Consequently, Defendants' objection to attorney's fees simply because such fees were not provided for in the Agreement is not dispositive. Even if attorney's fees were not specifically addressed within the contract, if there is statutory authority for awarding attorney's fees, then said fees are permissible. In Rhode Island, attorney's fees are statutorily prescribed for breach of contract actions in § 9-1-45. Therefore, if the elements of § 9-1-45 are established, the absence of contractual language providing for attorney's fees is inconsequential and attorney's fees may be properly awarded.
This Court finds that because there was not a complete absence of a justiciable issue of law or fact raised, Plaintiff has not satisfied its burden of showing that it is entitled to attorney fees under § 9-1-45. Accordingly, Plaintiff's motion for attorney's fees is denied. Upon review, this Court finds that Defendants raised several justiciable issues of fact or law. For instance, the Court below had to determine whether Defendants breached their warranty that to the best of their knowledge there was no UST on the property. Furthermore, the Court had to decide whether the Defendants' refusal to allow Plaintiff to excavate constituted a breach of the implied covenant of good faith and fair dealing as well as whether Plaintiff was a ready willing and able buyer at time of closing, so as to be entitled to specific performance.
Because Defendants did not succeed on these issues does not mean that no justiciable issues were raised. The Court can conclude that justiciable issues have been presented even when the evidence in support of those issues is eventually proven to be legally insufficient. UXB Sand Gravel, Inc. v. RosenfeldConcrete Corp., 641 A.2d 75, 80 (R.I. 1994). Here, the issue is not a simple claim on a book account upon which Defendants were clearly liable; instead the Defendants' liability required the resolution of several issues of law and fact. Consequently, Plaintiff's Motion for Attorney's Fees is denied.[7]
3) Third Party Defendants' Motion for Attorney's Fees
The Third Party Defendants' have also moved for attorney's fees pursuant to § 9-1-45. In support of their motion, Third Party Defendants argue that the Defendants (as Third Party Plaintiffs) raised no justiciable issue of fact or law. According to the Third Party Defendants, the Defendants brought two counts against them: Count I) Defendants claimed that they are entitled to the deposit in the possession of the Third Party Defendants and Count II) Third Party Defendants breached the Listing Agreement by failing to properly investigate the financial condition of Plaintiff. The Third Party Defendants argue that in regards to Count I, the Court found that the Third Party Defendants were not liable because they simply complied with the terms of the Agreement. Furthermore, according to the Third Party Defendants, because the Court found Defendants' Count II to be without merit, Defendants once again raised no justiciable issue of fact or law.
In response, Defendants argue that the Court had to resolve a number of issues to determine if the Third Party Defendants were entitled to their commission. Additionally, Defendants argue that even though the Defendants' witnesses were found to lack credibility, such a finding does not necessarily lead to the conclusion that Defendants' had no credible evidence upon which to bring their claims.
With respect to Count I, this Court finds that the Defendants raised no justiciable issue of fact or law. Paragraph 2(b) of the Agreement made it clear that the Third Party Defendants had no duty to provide the Defendants with the deposit until they were authorized in writing by all parties. That provision provides:
 "If there is a dispute as to whether Escrow Agent [Third Party Defendants] is obligated to deliver the deposit or as to which party the sum is to be delivered, Escrow Agent will not be obligated to make any delivery of the sum, but in such event may hold the sum until receipt by Escrow Agent of an authorization in writing signed by all parties hereto. In the absence of such authorization, Escrow Agent may hold the Deposit until final determination of rights of the parties hereto in an appropriate proceeding."
Furthermore, Third Party Defendants were acting pursuant to the clear provisions of G.L. 1956 § 5-20.5-26 (a)(1)(v), which required them to deposit the disputed funds with the general treasurer. As both the law and contract clearly set forth the Third Party Defendants' obligations, there was no justiciable issue of law or fact to resolve in regards to Defendants' Count I.
In regards to Count II, the Court simply found that the Defendants' claim was without merit. The Court found that the Third Party Defendants never assumed an express contractual duty to investigate Plaintiff's financial condition. This, however, was not an issue of fact for the Court to resolve, as the face of the Listing Agreement delineated what duties the Third Party Defendants expressly assumed. Furthermore, there was no legal issue for the Court to resolve as the law clearly does not impose upon real estate brokers an affirmative duty to investigate the financial condition of a prospective buyer, although the buyer's financial ability will affect the broker's right to a commission.See Gartner v. Higgins, 100 R.I. 285, 288, 214 A.2d 849, 851
(1965); Rushton v. Anderson, 47 R.I. 441, 443, 133 A. 805, 806
(1926) (Broker's only have a duty to disclose to principal those material facts known to the broker.) As Defendants have raised no judiciable issue of law or fact in their complaint against Third Party Defendants, the Third Party Defendants' Motion for Attorney's Fees is granted as to work performed on those issues.
The Third Party Defendants, however, brought their own claim for commission. This issue was not devoid of judiciable questions of fact and law, as the Court had to resolve whether Third Party Defendants had fulfilled their obligation under the listing agreement by providing a ready, willing, and able buyer. The Court further had to analyze whether Defendants' wrongful actions legally prevented them from denying Third Party Defendants their commission. Consequently, any legal fees incurred by Third Party Defendants as to these issues shall not be borne by Defendants. Third Party Defendants shall submit an affidavit in which they calculate, as best they can, which attorney's fees were incurred in response to the claims brought by the Defendants and which fees were earned for work performed on Third Party Defendants' counterclaim for their commission. This Court holds that Defendants shall be responsible for the reasonable attorney's fees incurred by Third Party Defendants in defending themselves against Defendants' claims, but Defendants shall not be liable for the attorney's fees Third Party Defendants incurred in their attempt to recover their commission.
4) Defendants' Motion to Amend Judgment
 a) Defendants' Representations
Defendants assert that it was a manifest error of law for the Court to find that the discovery of the pipe caused Defendants' representations and warranties to fail. Defendants argue that their representations regarding the existence of a UST were only to "the best of their knowledge."[8] According to Defendants, there was no evidence that Defendants possessed knowledge of the existence of a UST. Consequently, Defendants contend that the Court erroneously found them to have breached the Agreement.
In ruling on a motion for a new trial or a motion to amend judgment, the Court must keep in mind its limited standard of review. The Supreme Court of Rhode Island has articulated:
 "Following a nonjury trial, `the grounds for a motion for a new trial are extremely limited, and such motion is appropriate only in instances in which either the trial court may find a manifest error of law on the face of the judgment previously entered or there is newly discovered evidence, not previously known or discoverable in the exercise of reasonable diligence, that is of sufficient importance to warrant a new trial of the action.'" Hilton v. Fraioli, 763 A.2d 599, 603 (R.I. 2000) (quoting Finkelstein v. Finkelstein, 502 A.2d 350, 356 (R.I. 1985)).
Defendants here have not come forward with any new evidence that was not previously discoverable at trial. Therefore, for this Court to grant Defendants' motion, this Court must find that there is a manifest error of law on the face of the judgment. Upon review, this Court finds that it did not commit a manifest error of law by finding that Defendants' breached their warranties regarding the existence of a UST.
Defendants knew or should have known of the existence of the UST. First, there was the existence of the vent pipe sticking out of the ground of Defendants' property. Second, public records indicated that the property was heated by oil, not gas, and that there was no record of an oil tank ever being removed. Defendants argue, though, that even if they did obtain knowledge of the UST, such facts were not known until after Plaintiff's time for inspection had passed. However, the Court recognized that the Agreement specifically provided that "Seller further represents, warrants to and covenants with Buyer that the representations, warranties and agreements contained in [the Agreement] shall be true as of the Closing Date, and shall survive the Closing." (Purchase and Sale Agreement at ¶ 7.) Therefore, because the evidence showed Defendants knew of the storage tank prior to the Closing Date and that the warranty continued past the time for Plaintiff's inspection up to and past the Closing Date, Defendants breached their warranty. Consequently, Defendants' motion to amend judgment or in the alternative, motion for a new trial, on this ground is denied.
b) Defendants' Implied Obligations
Similar to the above argument, Defendants also assert that the Court committed a manifest error of law by finding that the Defendants had an implied obligation to permit Plaintiff to excavate the property and that Defendants breached this warranty by refusing to allow Plaintiff to do so. Defendants argue that even if their representations failed, the Agreement provided that Plaintiff's remedy would be to rescind the Agreement; in contrast, there was no provision in the Agreement under which Plaintiff was permitted to excavate. Further, Defendants claim that the Agreement provided Plaintiff with a specific time period in which he could conduct inspections. Because this time period had passed when Plaintiff made his request to dig, Defendants maintain that it was a clear error of law for the Court to find that Defendants had an obligation to permit Plaintiff to excavate at that point in time.
The Defendants' argument that the Court found Defendants breached the covenant to act in good faith because they refused to let Plaintiff excavate is without merit. The Court did not find that Plaintiff had an absolute right to excavate; rather, the refusal to allow Plaintiff to excavate and to further inspect into the existence of a UST, coupled with Defendants' persistent insistence that no such tank existed, is what caused the Court to find that there was a breach of the implied covenant of goodfaith and fair dealing. (Decision at 11.) The Court reasoned: "In this case, by refusing to allow the plaintiff to thoroughly inspect the property, while maintaining that there were no storage tanks, the defendants, for their own purposes, injured the plaintiff's right to receive the benefits of their agreement — to buy the property with full knowledge of its condition."Id.
The Court clearly held that "Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." Id. (citing Barber v.Jacobs, 753 A.2d 430, 435 (Conn.App. 2000); see alsoLajayi v. Fafiyebi, 860 A.2d 680, 687 (R.I. 2004) (citingDovenmuehle Mortgage, Inc. v. Antonelli, 790 A.2d 1113, 1115
(R.I. 2002) ("Virtually every contract contains an implied covenant of good faith and fair dealing between the parties.")). Consequently, by finding that Defendants' willful refusal to allow excavation was a bad faith attempt to injure the rights of Plaintiff, the Court did not commit a manifest error of law by holding that the implied covenant of good faith and fair dealing had been breached. The Court further notes that Defendants' argument that there could be no duty to allow excavation when such obligation was not explicitly placed in the Agreement is also misapplied to the Court's finding. The Court did not find that Defendants had an express duty to allow Plaintiff to dig on the property; instead, the Court simply found that the contract, like all contracts, had an implied covenant upon which Defendants had a duty to act in good faith and engage in fair dealing. The refusal to excavate per se was not a breach of any express duty but nonetheless, by refusing to allow excavation, in what the Court found was a deliberate attempt to prevent Plaintiff from obtaining pertinent knowledge, was a breach of good faith dealing.[9] Accordingly, Defendants' motion to amend judgment on this ground is also denied.
c) Restitution and Specific Performance
The Defendants next argue that because Plaintiff sought specific performance, Plaintiff essentially admitted that Defendants had not breached the Agreement, and as a result cannot be entitled to restitution. This argument is without merit. Super. R. Civ. P. 8(e)(2) explicitly permits parties to plead in the alternative and provides that the insufficiency of one claim will not make deficient an alternative claim which would adequately be supported if brought independently.[10] Seealso Silva v. Brown Sharpe Mfg. Co., 524 A.2d 571, 573
(R.I. 1987) ("[P]leading in the alternative is clearly allowed by Rule 8(e)(2)). As Professor Robert B. Kent, elucidated,
 "The most important consequence of this provision [Rule 8(e)(2)] is that the plaintiff may rely on as many theories of recovery as the circumstances of his case may permit. The fact that his substantive theories originated in different forms of action or that some were historically legal and others equitable does not preclude the availability of all of them in a complaint pleading a single set of circumstances, either in one count or several." Robert Brydon Kent, Rhode Island Practice § 8.8 (1969).
Rule 8(e)(2) allows a plaintiff to allege inconsistent claims, and Plaintiff is not required to make an election of claims.Wilkinson v. Vesey, 110 R.I. 606, 633, 295 A.2d 676, 692
(1972). Defendants would have this Court treat the alternative pleading as an admission to those set of circumstances. Rule 8, however, clearly allows for alternative pleadings. Therefore, Defendants' motion to amend judgment on this ground is denied.
 d) Effect of Breach of Purchase and Sale Agreement on Third Party Defendants' Commission
According to the Defendants, if the Court finds that Defendants breached their representations regarding the existence of the UST, then Third Party Defendants are not entitled to their commission. Defendants argue that pursuant to the Listing Agreement, Third Party Defendants are entitled to a commission only if they procure a buyer or if the property is sold during the term of the Listing Agreement. If Defendants' warranties failed, Defendants insist that the Agreement became null and void. If the Agreement is null and void, Defendants argue that Third Party Defendants could not have procured a buyer and therefore, they are not entitled to a commission.
The Supreme Court of Rhode Island has held that "If the failure to consummate the sale is due to the fault of the seller, the broker is entitled to his commission." Douglas v. Matzner,51 R.I. 1, 4, 149 A. 861, 863 (1930) (citing Tarbell v. Bomes,48 R.I. 86, 90, 135 A. 604, 605 (1927) ("If the contract falls through by reason of the seller's fault or neglect, the broker has earned his commission")). Here, the Court specifically found that the "defendants wrongfully thwarted the completion of the sale in refusing to cooperate in a reasonable investigation into the condition of the property." (Decision at 19.) Consequently, this Court cannot see how the Agreement provision affects Defendants' liability to pay the commission. Defendants' conduct, specifically their bad faith attempt to prevent the Plaintiff from obtaining knowledge to the existence of the UST, caused the sale to fail. Even were this Court to find that such behavior rendered the Agreement null and void, Defendants, pursuant toDouglas, are still liable for the commission as Defendants' wrongful behavior prevented the sale from closing, and Third Party Defendants did all that was required of them.[11]
Accordingly, Defendants' motion to amend judgment or in the alternative, for a new trial, on this ground is denied.
 e) Effect of the Denial of Specific Performance on Third Party Defendants' Commission
In an argument closely resembling the one above, Defendants claim that because the Court found that Plaintiff is not entitled to specific performance, it was an error of law to grant Third Party Defendants a commission. According to Defendants, the Court found that the Plaintiff was not ready, willing and able to close; consequently, Third Party Defendants had not procured a "buyer" as was required under the listing agreement for commission to become due. Defendants believe that all of the evidence indicates that Defendants were ready to go through with the sale and that it was Plaintiff's inability to close that caused the sale to collapse. Accordingly, Defendants assert it was an error for the Court to determine that Third Party Defendants earned their commission.
It is well-settled in Rhode Island that "`[a] broker has sufficiently performed and is entitled to compensation when he or she has produced a prospective purchaser who is ready, willing, and able to purchase at the price and terms of the seller.'"Griffin v. Zapata, 570 A.2d 659, 663 (R.I. 1990) (quotingRustigian v. Celona, 478 A.2d 187, 190 (R.I. 1984)). For a broker to be entitled to his or her commission, therefore, the sale does not have to be consummated. Id. As the Supreme Court of Rhode Island has held, "If the contract falls through by reason of the seller's fault or neglect, the broker has earned his commission." Tarbell v. Bomes, 48 R.I. 86, 90, 135 A. 604,605 (1927).
Defendants asserts that Third Party Defendants cannot obtain a commission here because the Court found that Plaintiff was not ready, willing, and able to perform at the time the sale was to have closed, as Plaintiff's financing had fallen through. The Court found, however, that at the time of signing the Agreement, and prior to the time of Defendants' bad faith actions, Plaintiff was a ready willing and able buyer. This finding is supported by the evidence, namely that Plaintiff had commitment letters from both Pitney Bowes Credit Corporation and Pawtucket Credit Union.
Even if this Court were to conclude that it erred by finding that Plaintiff had been a ready, willing and able buyer, this Court would still find that it was not manifestly wrong for Third Party Defendants to have been awarded their commission. The Court specifically recognized that a broker's commission is due if the closing is prevented by the wrongful conduct of the seller. (Decision at 19) (citing Hillis v. Lake, 658 N.E.2d 687, 690
(Mass. 1995); Capezzuto v. John Hancock Mut. Life Ins. Co.,476 N.E.2d 188 (1985)). Here, Defendants' bad faith refusal to allow Plaintiff to excavate to determine if a UST was on the property and Defendants' breach of the implied covenant of fair dealing caused the Plaintiff to lose his financing. Without such financing the Court was forced to conclude that Plaintiff was no longer a ready, willing and able buyer. However, as it was the Defendants' wrongful conduct that caused Plaintiff not to be a ready willing and able buyer, the Court did not err by finding Defendants liable for the commission because when "the failure to consummate the sale is due to the fault of the seller, the broker is entitled to his commission." Douglas v. Matzner, 51 R.I. 1,4, 149 A. 861, 863 (1930).
In the instant case, the Court found that the buyer was not ready willing and able to consummate the sale as of the closing date. However, here Defendants wrongfully caused the sale to fail at an earlier date as Defendants' conduct prevented the seller from remaining financially able to purchase the property. In such circumstances the seller should not be relieved from paying the broker's commission. See Bass v. Sevits, 433 N.Y.S.2d 245,247 (N.Y.App.Div. 1980) (Defendant sellers were required to pay broker's commission when the transaction was terminated because of defendant's failure to permit the plaintiff to perform the repairs necessary to obtain a mortgage). Consequently, Defendants' motion to amend judgment, whereby Third Party Defendants would not receive their commission, is denied.
f) Restitution and Interest
Defendants next ask this Court to amend the judgment so that any restitution awarded in favor of Plaintiff does not include prejudgment interest. According to Defendants, interest may only be awarded when the court renders a judgment for pecuniary damages. Here, as Plaintiff's award is for restitution, Defendants assert that interest cannot also be granted.
Interest in civil actions is governed by G.L. 1956 §9-21-10(a), which requires the following:
 "In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein. Post-judgment interest shall be calculated at the rate of twelve percent (12%) per annum and accrue on both the principal amount of the judgment and the prejudgment interest entered therein. This section shall not apply until entry of judgment or to any contractual obligation where interest is already provided." (Emphasis added.)
By its very terms, § 9-21-10 applies only to civil actions for damages. Rhode Island Insurer's Insolvency Fund v. Leviton Mfg.Co., 763 A.2d 590, 597 (R.I. 2000). "`Pecuniary damages' are defined as those damages that represent `not merely the loss of money . . . but all such loss, deprivation, or injury as can be made the subject of calculation and of recompense in money.'"Id. (citing Black's Law Dictionary 392 (6th ed. 1990)). The Supreme Court of Rhode Island has explicitly held that pursuant to the above statute, prejudgment interest shall not be awarded in cases for reimbursement. The Court has stated that "[t]he return of a deposit is simply a reimbursement rather than an award of pecuniary damages, and thus the plaintiffs are not entitled to the addition of statutory interest." Bogosian v.Bederman, 823 A.2d 1117, 1121 (R.I. 2003) (citing Rhode IslandInsurer's Insolvency Fund, 763 A.2d at 597-98).
Like the plaintiffs in Bogosian, Plaintiff here has only been awarded a return of his deposit. Accordingly, Plaintiff is not receiving pecuniary damages; rather, he is simply being reimbursed the money which he had already paid and nothing more. Therefore, it would be a manifest error to award prejudgment interest on Plaintiff's award, as prejudgment interest is not permissible on judgments for reimbursement. The Court further recognizes that "[p]rejudgment interest is not an element of damages but is purely statutory, peremptorily added to the award by the clerk. Barbato v. Paul Revere Life Insurance Co.,794 A.2d 470, 472 (R.I. 2002).
Post-judgment interest, however, is specifically governed by G.L. 1956 § 6-26-1 which provides that "Post judgment interest onany judgment, and interest in all business transactions where interest is secured or paid, shall be computed at the rate of twelve dollars ($12.00) on one hundred dollars for one year, unless a different rate is expressly stipulated." (Emphasis added.) This statute does not contain the provision which limits interest to judgments for pecuniary damages. Consequently, the clerk shall award post-judgment interest. Judgment shall accordingly be amended to reflect this decision.
g) Defendant Gauthier's Personal Liability
The Defendants also assert that Cheryl A. Gauthier should not be a named defendant in this matter as the property is owned, not by her, but by the two corporate defendants, CAG Land Corporation and CAG Hospitality Corporation. While it is true that the Court is reluctant to pierce the veil that separates the corporation from the individuals that own it, the Court has also recognized that there are circumstances when, in the interest of justice, it is appropriate to do so. UST Corp. v. General Rd. TruckingCorp., 783 A.2d 931, 940 (R.I. 2001).
One circumstance in which the corporate veil should be pierced is when the corporate entity is used to defeat public convenience, justify wrong, protect fraud, defend a crime, or generally work an injustice. RB Electric Co., Inc. v. AmcoConstruction Co., Inc., 471 A.2d 1351, 1354 (R.I. 1984). A corporation should also be disregarded and its shareholders held personally liable when the corporation acts as a "sham behind which its shareholders [conduct] their personal affairs." Id.
Similarly, where a corporation is so owned and controlled and its affairs so conducted as to make it merely an instrumentality, agency, conduit or adjunct of its shareholders or parent corporation, the Court should pierce the corporate veil. Doe v.Gelineau, 732 A.2d 43, 49 (R.I. 1999).
In the matter here, Gauthier is the sole shareholder of CAG Land Corporation and CAG Hospitality Corporation. Simply because there is a sole stockholder in control of a corporation is insufficient to justify disregarding the corporate entity.Vennerbeck Clase Co. v. Juergens Jewelry Co., 53 R.I. 135,138, 164 R.I.A. 509, 510 (1933). However, if the corporation is merely an instrumentality of the shareholder, the corporate veil may be pierced. Here, the Court pierced the corporate veil, allowing Gauthier to be named as an individual defendant. In making this decision the Court relied upon Judd Realty, Inc. v.Tedesco, 400 A.2d 952, 954 n. 1 (R.I. 1979) for the Supreme Court of Rhode Island's finding that if a defendant testifies that he or she is the sole owner and shareholder of a corporation holding a piece of property and that there is no difference between the owner and the corporation, the court may pierce the corporate veil and hold the owner liable for a broker's commission. The Court noted that at trial, Gauthier testified that it was in fact she who owned the property in question; implicitly, the Court found that the corporation was simply an instrumentality of Gauthier. This finding is further supported by the fact that Gauthier signed the Listing Agreement in her individual capacity and not as president of either of the defendant corporations. As Defendants have not presented this Court with any new evidence and have failed to demonstrate why piercing the corporate veil was a clear error of law, Defendants' motion to amend judgment or in the alternative for a new trial on this ground is denied.
 Conclusion
Third Party Defendants' motion to attach is denied and their motion for attorney's fees is granted in part and denied in part. Plaintiff's motion for attorney's fees is denied. Defendants' motion to amend judgment or in the alternative, for a new trial, is denied, provided that judgment shall reflect that Plaintiff is not entitled to prejudgment interest. Pursuant to the Court's May 27, 2005 Decision, the parties are directed to submit affidavits to the Court regarding the amount of restitution to which Plaintiff is entitled. Parties shall further submit an order for entry consistent with this opinion.
[1] A more complete recitation of the facts may be found in the Court's prior decision in this matter. See Normandin v.Gauthier, 2005 R.I. Super LEXIS 89 (May 27, 2005).
[2] In exchange for this extension, Plaintiff tendered an additional $27,500 to Third Party Defendants.
[3] The Court below found that Defendant Gauthier accompanied Puliafico on these inspections.
[4] Defendants thereafter contacted the North Providence Fire Department, which indicated that they had no records of a UST ever being removed from the subject property. The Defendants then had the tank removed and the remaining heating oil disposed.
[5] It appears from the record that judgment had been entered by the Court. However, the parties had agreed that judgment would not enter until the issues in the post-trial motions had been heard and decided by the Court. Therefore, at a hearing held on February 27, 2005, the Court vacated the judgment that had previously been entered, until the motions now before the Court were resolved. (See Hearing Transcript, 2/27/06.)
[6] Defendants also asserted that the motion to attach is premature but have apparently since conceded this point.
[7] As Plaintiff is denied attorney's fees, the Court need not address Defendants' Request for Discovery as to the amount of said fees.
[8] In Paragraph 7(j) of the Agreement, Defendants warranted that "To the best of Seller's knowledge, there are no underground storage tanks, in, on, under or about the property." Defendants also warranted that "to the best of Seller's knowledge, the Seller has not utilized the Property, nor any part thereof to treat, deposit, store, dispose of, or place any Hazardous Substances. . . ." (Purchase and Sale Agreement at ¶ 7(c).)
[9] Similarly, the Court is aware that the Agreement provided a time period in which Plaintiff could inspect the premises. However, the Court found that it was deliberate bad faith on the part of Defendants to refuse to allow a later excavation and to continue to maintain that no UST was on the property in order to deprive Plaintiff of pertinent information. Consequently, the implied duty to act in good faith, not necessarily the Agreement provision which provided for inspections, was breached.
[10] Rule 8(e)(2) specifically allows alternative pleadings:
 "A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal or equitable grounds or both. . . ."
[11] This Court agrees with the Supreme Court of Connecticut which held, "Because the listing contract and the sales contract create independent rights and duties, the broker's right to its commission, once earned, cannot thereafter be defeated by the conduct of the parties to the sales contract." Revere RealEstate, Inc. v. Cerato, 186 Conn. 74, 81, 438 A.2d 1202, 1206
(1982).